IN THE SUPREME COURT OF NORTH CAROLINA

 2021-NCSC-88

 No. 115A04-3

 Filed 13 August 2021

 STATE OF NORTH CARLOLINA

 v.
 SCOTT DAVID ALLEN

 On writ of certiorari pursuant to N.C.G.S. § 7A-32(b) to review orders

 dismissing defendant’s claims asserted in his motion for appropriate relief entered on

 22 August 2016, 8 January 2018, and 6 February 2019 by Judge V. Bradford Long in

 Superior Court, Montgomery County. Heard in the Supreme Court on 26 April 2021.

 Joshua H. Stein, Attorney General, by Nicholaos Vlahos, Assistant Attorney
 General, for the State-appellee.

 Olivia Warren and Michael L. Unti for defendant-appellant.

 EARLS, Justice.

¶1 This case involves numerous post-conviction claims raised by defendant Scott

 David Allen, who was found guilty of the first-degree murder of Christopher Gailey

 and sentenced to death in Montgomery County in 2003. Allen challenged his

 conviction and sentence on direct appeal, but this Court unanimously found no error.

 State v. Allen, 360 N.C. 297, 321 (2006). The Supreme Court of the United States

 denied certiorari. Allen v. North Carolina, 549 U.S. 867 (2006). Subsequently, Allen

 filed a motion for appropriate relief (MAR) in Superior Court, Montgomery County
 STATE V. ALLEN

 2021-NCSC-88

 Opinion of the Court

 (MAR court), in July 2007. Six years later, and before the MAR court ruled on his

 MAR, Allen filed a supplemental motion for appropriate relief (SMAR) amending

 some of his previous claims and adding two additional claims. The MAR court’s

 dismissal of these claims forms the basis of defendant’s petition to this Court.

¶2 Of the twelve total claims raised in Allen’s MAR and SMAR, five of them

 directly relate to his allegation that his trial attorneys rendered unconstitutionally

 ineffective assistance of counsel (IAC) during the guilt-innocence phase of his trial by

 failing to investigate, develop, and utilize various sources of exculpatory evidence.

 The evidence Allen presented in support of these claims includes affidavits from

 acquaintances of Allen and the State’s primary witness, Vanessa Smith, implicating

 Smith in Gailey’s murder, as well as a report from a crime scene expert concluding

 that in light of the physical evidence discovered at the scene of Gailey’s death, Smith’s

 account of Gailey’s killing was “unfathomable.” Notwithstanding this evidence and

 the centrality of Smith’s testimony to Allen’s conviction, the MAR court dismissed

 Allen’s guilt-innocence phase IAC claims without conducting an evidentiary hearing

 to resolve disputed issues of fact.

¶3 Based on well-established precedent, we conclude that Allen is entitled to an

 evidentiary hearing on his guilt-innocence phase IAC claims. Allen has “present[ed]

 assertions of fact which will entitle [him] to . . . relief . . . if resolved in his favor.”

 State v. McHone, 348 N.C. 254, 258 (1998). Therefore, under the statutory framework
 STATE V. ALLEN

 2021-NCSC-88

 Opinion of the Court

 governing post-conviction review of criminal convictions in North Carolina, the MAR

 court was obligated to conduct an evidentiary hearing prior to ruling on his MAR and

 SMAR claims, because “some of his asserted grounds for relief required the [MAR]

 court to resolve questions of fact.” Id. (interpreting N.C.G.S. § 15A-1420(c)(1)).

 Accordingly, we vacate the portions of the MAR court’s order summarily dismissing

 Allen’s guilt-innocence phase IAC claims and remand to the MAR court to conduct a

 full evidentiary hearing.

¶4 In addition, we hold that the trial court erred in summarily ruling that Allen’s

 claim alleging he was impermissibly shackled in view of the jury was procedurally

 barred. On this claim, we vacate the relevant portion of the MAR court’s order and

 remand for an evidentiary hearing to obtain the facts necessary to determine whether

 his claim is procedurally barred and, if not, whether it has merit. We affirm the MAR

 court’s disposition of all other claims raised in Allen’s MAR and SMAR.

 I. Factual Background

 A. Gailey’s death and Allen’s trial.

¶5 In 1998, Allen escaped from a North Carolina Department of Corrections work

 release program. Shortly after fleeing, he reunited with Smith, with whom he had

 maintained an on-again, off-again romantic relationship. The couple drifted from

 hotel to hotel, living off settlement proceeds Smith received after her father’s death.

 Allen and Smith regularly purchased and used large quantities of illegal drugs
 STATE V. ALLEN

 2021-NCSC-88

 Opinion of the Court

 together. To evade detection, Allen obtained a friend’s birth certificate and driver’s

 license issued by the State of Washington. While travelling through Colorado, Allen

 became romantically involved with another woman, and Allen and Smith split up.

 The former couple returned to North Carolina separately in the spring of 1999. That

 summer, they began living together in a mobile home owned by a friend, Robert

 Johnson, near the Uwharrie National Forest. Various friends and acquaintances

 lived in the mobile home while Smith and Allen resided in it, including Gailey, Allen’s

 friend and sometimes drug dealer.

¶6 Sometime during the afternoon of 9 July 1999, Allen, Smith, and Gailey

 entered the Uwharrie National Forest. At some point that evening, somebody shot

 and killed Gailey. His body was later found by a passerby driving an all-terrain

 vehicle. Smith eventually told law enforcement Allen killed Gailey to steal his money

 and drugs. Both Allen and Smith were charged with murder.

¶7 Approximately two weeks before Allen was brought to trial, Smith—who by

 that time had spent approximately twenty-three months in jail—entered into an

 agreement with the State. In exchange for her testimony against Allen, the State

 would drop the murder charges against her, and she would plead guilty to a lesser

 offense. At trial, Smith testified that Allen was the sole person responsible for

 Gailey’s death and that Allen acted in cold blood. According to Smith, Allen

 assassinated Gailey by shooting him from behind, unprovoked, as they walked along
 STATE V. ALLEN

 2021-NCSC-88

 Opinion of the Court

 a path in the woods.

¶8 Because Allen did not testify, Smith provided the sole narrative of the events

 directly precipitating Gailey’s death. As we explained in our decision resolving Allen’s

 direct appeal, Smith was “a witness with less-than-perfect credibility.” Allen, 360

 N.C. at 306. She was a chronic heavy drug user who admitted to smoking marijuana

 shortly before Gailey’s death. She was involved in a tumultuous romantic relationship

 with Allen which he had recently broken off. She accused Allen of Gailey’s murder

 only after confronting him in Denver, Colorado, where Allen had reunited with a

 different ex-girlfriend. She testified at the trial pursuant to a deal with the State

 which significantly reduced her potential criminal liability.

¶9 According to Smith’s account of events, on 9 July 1999, Allen told her and

 Gailey he had stashed weapons in a cabin in the Uwharrie National Forest, which he

 thought they could recover and trade for money and cocaine. The trio left together in

 Gailey’s truck to retrieve the weapons sometime in the afternoon, while it was still

 light out. The party began walking along a path through the forest. Gailey was

 carrying a duffel bag and a .45-caliber handgun. Allen carried a sawed-off shotgun.

 During the walk, Gailey and Allen used powder cocaine. Smith smoked marijuana.

 Smith testified that after at least an hour of walking, the path narrowed, and the

 three proceeded single file with Gailey leading the way, followed by Allen and then

 Smith.
 STATE V. ALLEN

 2021-NCSC-88

 Opinion of the Court

¶ 10 At some point, Allen allegedly turned around, shoved Smith to the ground, and

 then without provocation began shooting at Gailey with the shotgun. Smith did not

 see Allen shoot Gailey, but she recounted hearing multiple gunshots. Smith and Allen

 then waited for “seven or eight hours” in a nearby cabin for Gailey to die. While they

 were waiting, Allen would periodically crawl towards Gailey’s body and throw rocks

 at him to ascertain whether Gailey was still alive. When Allen and Smith finally left

 the cabin, they heard Gailey empty his .45-caliber handgun.

¶ 11 Allen and Smith left the forest together in Gailey’s truck. Smith retrieved

 Gailey’s wallet and their belongings from the mobile home. The two then drove to

 Shallotte and then to Albemarle in search of cocaine. However, by this point, Smith’s

 memory had begun to deteriorate due to her drug use.

¶ 12 According to multiple witnesses, Smith and Allen ended up at a party at the

 home of one of Smith’s friends, where they encountered a man named Jeffrey Lynn

 Page, who would later testify at Allen’s trial. According to Page, who had never

 previously met Allen, Allen admitted that he had just shot a man in the Uwharrie

 National Forest and was looking to offload the dead man’s truck. Allen told Page he

 had thrown rocks at Gailey’s body to confirm he was dead because Allen knew Gailey

 was armed. Page bought Allen’s truck at well below market value and then flipped it

 to a South Carolina junk dealer for a profit. Like Smith, Page was also charged in

 connection with Gailey’s death—he was indicted for being an accessory after the fact
 STATE V. ALLEN

 2021-NCSC-88

 Opinion of the Court

 to Gailey’s murder—and testified at Allen’s trial pursuant to an agreement with the

 State.

¶ 13 Sometime after selling Gailey’s truck, Allen returned to Denver. Smith

 testified that one of her former romantic partners, who she reunited with shortly after

 Gailey’s death, loaned her money and a car to travel to Denver1 where she was able

 to track down Allen. Allen and Smith fought. Smith returned to North Carolina. Upon

 her return, Smith went to law enforcement to accuse Allen of murdering Gailey.

¶ 14 Law enforcement officers who examined the crime scene discovered the

 following evidence:

  A .45-caliber semi-automatic handgun between Gailey’s feet, loaded with a

 magazine containing five live rounds, and one spent .45-caliber shell casing

 jammed in the receiver;

  A number of live rounds of .45-caliber ammunition next to Gailey;

  A magazine containing live rounds several feet from Gailey’s head;

  A black t-shirt draped over a rock with another smaller rock on top of it,

 approximately four feet from Gailey’s body;

  A nylon handgun holster;

  Five expended shotgun shells;

 1The former romantic partner subsequently filed a police report and testified at
 Allen’s trial that rather than loaning Smith the money and her car, Smith stole both items.
 STATE V. ALLEN

 2021-NCSC-88

 Opinion of the Court

  A hunting knife located on top of a duffel bag;

  A yellow container with $1,944.00 in cash on Gailey’s body.

 According to the State’s forensic pathologist, Gailey died from two gunshot wounds,

 one to the back of his right shoulder from close range and another to his right knee

 from a further distance. In the pathologist’s opinion, Gailey probably lost

 consciousness “within a matter of minutes” of sustaining his injuries, and it was

 “extremely unlikely” Gailey survived for more than an hour or two after he was shot.

¶ 15 The State’s case rested primarily on the testimony of Smith and Page. No

 fingerprint, DNA, or forensic evidence connecting Allen to the crime scene was ever

 produced, nor was the alleged murder weapon—Allen’s sawed off-shogun—ever

 located. The jury was instructed on the offense of first-degree murder and the lesser

 included offenses of second-degree murder and voluntary manslaughter. During

 closing argument, the State emphasized Smith’s testimony that Allen had thrown

 rocks at Gailey’s body while they waited for hours for Gailey to die in seeking to

 persuade the jury to convict on a theory of malice, premeditation, and deliberation.

 Eschewing Smith’s initial theory that Allen murdered Gailey for his money, the State

 argued in closing that Allen killed Gailey “to keep him from ratting [Allen] out . . .

 [and] to keep [Allen] from being arrested for his year-long rampage.” The jury found

 Allen guilty of first-degree murder.

¶ 16 During the sentencing phase, the State submitted three aggravating
 STATE V. ALLEN

 2021-NCSC-88

 Opinion of the Court

 circumstances to the jury: (1) the murder was committed for the purpose of avoiding

 or preventing a lawful arrest; (2) the murder was committed for pecuniary gain; and

 (3) the murder was especially heinous, atrocious, or cruel. Allen’s trial counsel

 submitted one statutory mitigating circumstance and fourteen non-statutory

 mitigating circumstances. The jury determined the State had proven all three

 aggravating circumstances beyond a reasonable doubt. Allen established only two

 non-statutory mitigating circumstances—that he had been deeply affected by the

 death of his grandfather and that Allen’s death would have a detrimental impact on

 his family. The jury found the mitigating circumstances insufficient to outweigh the

 aggravating circumstances and that the aggravating circumstances, when considered

 with the mitigating circumstances, were sufficiently substantial to call for the

 imposition of the death penalty. Allen was sentenced to death.

 B. Allen’s MAR and SMAR claims.

¶ 17 Allen filed his initial MAR on 2 July 2007. In his MAR, Allen asserted the

 following ten claims:

  Claim I: The State knowingly presented false and misleading evidence at trial

 in violation of Allen’s rights under the Fourteenth Amendment to the

 Constitution of the United States.

  Claim II: Allen’s trial counsel provided IAC during the guilt-innocence phase

 by failing to investigate and call defense witnesses who could have provided
 STATE V. ALLEN

 2021-NCSC-88

 Opinion of the Court

 exculpatory evidence.

  Claim III: Allen’s trial counsel provided IAC during the guilt-innocence phase

 by failing to effectively cross-examine the State’s witnesses.

  Claim IV: The State failed to produce exculpatory material before trial in

 violation of Brady v. Maryland, 373 U.S. 83 (1963).

  Claim V: The trial court lacked jurisdiction to try, convict, and sentence Allen

 because the State’s indictment for first-degree murder was fatally deficient.

  Claim VI: Allen’s trial counsel rendered IAC during both the guilt-innocence

 and the sentencing phases of his trial by failing to object to the State’s improper

 statements during closing arguments.

  Claim VII: Allen’s trial counsel rendered IAC during the sentencing phase by

 failing to present testimony from a mental health expert.

  Claim VIII: Allen’s trial counsel rendered IAC during the sentencing phase by

 failing to investigate and present available mitigation evidence.

  Claim IX: Allen’s trial counsel rendered IAC during the sentencing phase by

 failing to adequately prepare Allen’s witnesses to testify.

  Claim X: Allen’s trial counsel rendered IAC based upon the cumulative effect

 of his counsel’s various errors during both the guilt-innocence and sentencing

 phases of his trial.

In support of his MAR, Allen submitted statements and affidavits from individuals
 STATE V. ALLEN

 2021-NCSC-88

 Opinion of the Court

 who interacted with Allen, Gailey, and Smith before and after Gailey’s death, as well

 as from Allen’s friends and family members. Allen also submitted affidavits from two

 mental health experts, Dr. John F. Warren III, a forensic psychologist, and Dr.

 Kristine M. Herfkens, a neuropsychologist.

¶ 18 On 19 September 2013, Allen filed his SMAR. In his SMAR, Allen

 supplemented and amended various claims he initially raised in his MAR based upon

 new affidavits and statements elicited during additional post-conviction

 investigation. Allen again submitted affidavits from acquaintances of Smith’s who

 cast doubt on her version of events—including an affidavit from Smith’s former

 boyfriend stating that Smith told him she had been the one who developed and carried

 out the plan to jump Gailey and take his cocaine and cash. Of particular note, Allen

 submitted an affidavit and report prepared by Gregory McCrary (the McCrary

 Report), a former agent with the Federal Bureau of Investigation, who examined the

 evidence law enforcement found at the crime scene and determined it was

 inconsistent with Smith’s account of an unprovoked execution. Instead, McCrary

 concluded the evidence reflected a physical confrontation which had devolved into a

 shootout between Allen and Gailey.

¶ 19 Allen’s SMAR also contained two new claims:

  Claim XI: Allen’s trial counsel rendered IAC during the guilt-innocence

 phase by failing to investigate evidence implicating a third party in Gailey’s
 STATE V. ALLEN

 2021-NCSC-88

 Opinion of the Court

 murder.

  Claim XII: Allen was impermissibly shackled in the presence of the jury

 without the trial court conducting a hearing or entering findings of fact as

 to the need for restraints.

 Allen sought a new trial and sentencing hearing or, in the alternative, an evidentiary

 hearing on his MAR and SMAR claims.

¶ 20 In response, the State answered and moved for summary dismissal of all

 claims. On 17 May 2016, the MAR court sent the parties a Memorandum of Ruling

 asking the parties to draft proposed orders disposing of Allen’s MAR and SMAR

 claims. Ultimately, the MAR court issued three separate orders.

¶ 21 The first order—the “Order Summarily Dismissing Certain Claims of

 Defendant’s Motion for Appropriate Relief and Supplemental Motion for Appropriate

 Relief”—summarily dismissed Claims I, II, IV, V, VI, X, XI, and XII in their entirety

 and certain subparts of Claim III.2 The second order concerned the trial court’s

 decision to deny Allen access to some of Smith’s sealed mental health and substance

 abuse treatment records during trial. In this order, the MAR court provided for a

 “limited evidentiary hearing” to determine if Allen had presented sufficient evidence

 of prejudice to warrant a full evidentiary hearing. After conducting this limited

 2 The MAR court and the parties use numbers and Roman numerals interchangeably

 throughout the proceedings below. For consistency, we use Roman numerals when referring
 to Allen’s claims throughout this opinion.
 STATE V. ALLEN

 2021-NCSC-88

 Opinion of the Court

 evidentiary hearing, the MAR court dismissed these sub-claims in its “Order

 Granting State’s Motion to Dismiss Claims 3H, 3J, 3K and a Portion of 3I of

 Defendant’s Supplemental Motion for Appropriate Relief.” The third order—the

 “Order on State’s Summary Denial Motion on Claims VII, VIII, and IX”—granted

 Allen an evidentiary hearing on his claims alleging IAC during the sentencing phase

 of his trial. After completing this full evidentiary hearing, the MAR court dismissed

 these claims in its “Order Granting State’s Motion to Dismiss Claims [VII], [VIII],

 and [IX] of Defendant’s Motion for Appropriate Relief and Supplemental Motion for

 Appropriate Relief.”

¶ 22 On appeal, Allen challenges the MAR court’s disposition of every claim raised

 in his MAR and SMAR. On the claims the MAR court summarily denied or denied

 after the limited evidentiary hearing—Claims I, II, III, IV, V, VI, X, XI, and XII—

 Allen asks us to vacate the orders dismissing those claims and remand for a full

 evidentiary hearing. On the claims the MAR court denied after a full evidentiary

 hearing—Claims VII, VIII, and IX—Allen seeks a reversal of the order dismissing

 those claims and a remand for a new sentencing proceeding. The State opposes and

 asks this Court to affirm the MAR court’s orders dismissing all claims. We hold that

 the MAR court erred in summarily dismissing Allen’s guilt-innocence phase IAC

 claims, as well as his impermissible shackling claim. We affirm the portions of the

 MAR court’s orders dismissing all other claims.
 STATE V. ALLEN

 2021-NCSC-88

 Opinion of the Court

 II. Analysis

¶ 23 Our examination of the MAR court’s disposition of Allen’s MAR and SMAR

 claims necessarily begins with the statutes governing post-conviction review. Under

 N.C.G.S. § 15A-1420, a capital defendant who files an MAR within the appropriate

 time period “is entitled to a hearing on questions of law or fact arising from the motion

 and any supporting or opposing information presented unless the court determines

 that the motion is without merit.” N.C.G.S. § 15A-1420(c)(1) (2019). When a capital

 defendant has properly filed an MAR, the trial court “must determine, on the basis of

 these materials and the requirements of this subsection, whether an evidentiary

 hearing is required to resolve questions of fact.” Id. If the defendant’s MAR and

 supporting materials create disputed issues of fact, then the MAR court is obligated

 to conduct an evidentiary hearing to resolve any disputed facts unless “the trial court

 can determine that the defendant is entitled to no relief even upon the facts as

 asserted by him.” McHone, 348 N.C. at 257.3 By contrast, when a defendant’s MAR

 3 When a non-capital defendant files an MAR pursuant to N.C.G.S. § 15A-1414(a)(1),

 which must be filed within ten days after entry of judgment, the trial court is not required to
 conduct an evidentiary hearing. Instead, as provided under N.C.G.S. § 15A-1420(c)(2), “[a]n
 evidentiary hearing is not required when the motion is made in the trial court pursuant to
 [N.C.G.S. §] 15A-1414, but the court may hold an evidentiary hearing if it is appropriate to
 resolve questions of fact.” N.C.G.S. § 15A-1420(c)(2) (2019) (emphases added). Because Allen
 is a capital defendant who did not file his MAR pursuant to N.C.G.S. § 15A-1414, the trial
 court lacks discretion to refuse to conduct an evidentiary hearing if his MAR and supporting
 materials created disputed factual issues which, if resolved in his favor, would entitle him to
 relief.
 STATE V. ALLEN

 2021-NCSC-88

 Opinion of the Court

 “presents only questions of law, including questions of constitutional law, the trial

 court must determine the motion without an evidentiary hearing.” Id.

¶ 24 Thus, our analysis of Allen’s challenge to the MAR court’s summary dismissal

 of certain claims differs from our analysis of Allen’s challenge to the MAR court’s

 dismissal of other claims after conducting an evidentiary hearing. We review the

 MAR court’s summary dismissal de novo to determine whether the evidence

 contained in the record and presented in Allen’s MAR—considered in the light most

 favorable to Allen—would, if ultimately proven true, entitle him to relief. McHone,

 348 N.C. at 258 (“Under subsection (c)(4), read in pari materia with subsection (c)(1),

 (c)(2), and (c)(3), an evidentiary hearing is required unless the motion presents

 assertions of fact which will entitle the defendant to no relief even if resolved in his

 favor.”) (emphasis added); see also State v. Jackson, 220 N.C. App. 1, 6 (2012) (“[T]he

 ultimate question that must be addressed in determining whether [an MAR] should

 be summarily denied is whether the information contained in the record and

 presented in the defendant’s [MAR] would suffice, if believed, to support an award of

 relief.”).4 If answering this question requires resolution of any factual disputes,

 4 To be clear, the MAR court only views the evidence presented in a defendant’s MAR

 in the light most favorable to the defendant when making the initial determination as to
 whether the facts alleged by the defendant would entitle the defendant to relief if proven
 true. Nothing in this opinion alters the undisputed premise that the defendant ultimately
 bears the burden of proving by a preponderance of the evidence “the existence of the asserted
 ground for relief.” N.C.G.S. § 15A-1420(c)(6).
 STATE V. ALLEN

 2021-NCSC-88

 Opinion of the Court

N.C.G.S. § 15A-1420(c)(1) requires us to vacate the summary dismissal order and

remand to the MAR court to conduct an evidentiary hearing. McHone, 348 N.C. at

259 (“This Court is not the appropriate forum for resolving issues of fact . . . .”). 5 At

this stage, the MAR court is entitled to summarily dismiss claims that are irrelevant

(e.g., claims that even if proven true, would not entitle the defendant to relief) and

claims that are without any apparent evidentiary basis (e.g., unsupported

assertions). When the factual allegations would entitle the defendant to relief if true,

and the defendant’s filings provide some evidentiary basis for the allegations, then

the MAR court must conduct an evidentiary hearing to determine the facts necessary

to resolve the claim on its merits. However, if the MAR court has already conducted

an evidentiary hearing, our role is “to determine . . . whether the findings of fact

support the conclusions of law, and whether the conclusions of law support the order

entered by the trial court.” State v. Matthews, 358 N.C. 102, 105–06 (2004) (quoting

State v. Stevens, 305 N.C. 712, 720 (1982)). The MAR court’s factual findings are

“binding upon the [defendant] if they [a]re supported by evidence,” even if the

 5 The dissent erroneously states that “this Court did not remand McHone for an
evidentiary hearing.” But see McHone, 348 N.C. at 258–60 (“[D]efendant also contends in the
present case that he was entitled to an evidentiary hearing before the trial court ruled on his
motion for appropriate relief as supplemented because some of his asserted grounds for relief
required the trial court to resolve questions of fact. We find this contention to have
merit. . . . The trial court erred in denying defendant's supplemental motion without an
evidentiary hearing. . . . [W]e reverse the trial court's order denying defendant's motion for
appropriate relief and remand this case to that court for further proceedings.”). Moreover,
McHone is not the only authority for the disposition in this case. The MAR statute itself
makes it clear that an evidentiary hearing is required in these circumstances.
 STATE V. ALLEN

 2021-NCSC-88

 Opinion of the Court

 evidence is “conflicting,” Stevens, 305 N.C. at 719–20, but the MAR court’s conclusions

 of law are always reviewed de novo, State v. McNeill, 371 N.C. 198, 220 (2018).

¶ 25 We proceed by applying this legal framework to Allen’s claims as follows: First,

 we review the portions of the MAR court’s order summarily dismissing Allen’s claims

 alleging he received IAC during the guilt-innocence phase of his trial. Second, we

 review the other claims addressed in the summary dismissal order which do not

 directly allege IAC. Third, we review the order dismissing certain subparts of Claim

 III relating to the trial court’s refusal to grant Allen access to Smith’s treatment

 records entered after the MAR court conducted a “limited evidentiary hearing.”

 Finally, we review the order dismissing Allen’s claims alleging IAC during the

 sentencing phase of his trial entered after the MAR court conducted a full evidentiary

 hearing.

 A. Ineffective assistance of counsel during the guilt-innocence phase.

¶ 26 Allen’s argument that his attorneys rendered IAC during the guilt-innocence

 phase of his trial encompasses multiple interrelated claims. Because these claims

 substantially overlap both factually and legally—and because the MAR court

 disposed of these claims in a single summary dismissal order—we consider them

 together. Specifically, in this section, we consider in their entirety Claim II (trial

 counsel’s failure to investigate and call certain witnesses), Claim VI (trial counsel’s

 failure to object to improper statements during closing arguments), Claim X
 STATE V. ALLEN

 2021-NCSC-88

 Opinion of the Court

 (cumulative prejudice arising out of trial counsel’s multiple instances of deficient

 performance), and Claim XI (trial counsel’s failure to investigate evidence of a third

 party’s guilt). We also consider the subparts of Claim III (trial counsel’s failure to

 effectively cross-examine the State’s witnesses) which the MAR court resolved

 without conducting an evidentiary hearing. Although addressed in the same order,

 we separately address the claims which do not predominantly concern Allen’s IAC

 allegations, namely Claim I (the State knowingly presented false and misleading

 evidence), Claim IV (the State failed to disclose exculpatory evidence before trial),

 Claim V (the trial court lacked jurisdiction because Allen’s indictment was fatally

 deficient), and Claim XII (Allen was impermissibly shackled in view of the jury).

¶ 27 This Court has “expressly adopt[ed]” the two-part test articulated in

 Strickland v. Washington, 466 U.S. 668 (1984), as the “uniform standard to be applied

 to measure ineffective assistance of counsel under the North Carolina Constitution”

 and the Sixth Amendment to the Constitution of the United States. State v. Braswell,

 312 N.C. 553, 562–63 (1985). Under the first prong of the Strickland test, a defendant

 must “establish that counsel’s performance was deficient.” State v. Todd, 369 N.C.

 707, 710 (2017). To prove deficient performance, “the defendant must show that

 counsel’s representation fell below an objective standard of reasonableness.”

 Strickland, 466 U.S. at 688. Under the second prong of the Strickland test, the

 “defendant must demonstrate that the deficient performance prejudiced [his]
 STATE V. ALLEN

 2021-NCSC-88

 Opinion of the Court

 defense.” Todd, 369 N.C. at 710–11. To prove prejudice, “[t]he defendant must show

 that there is a reasonable probability that, but for counsel’s unprofessional errors,

 the result of the proceeding would have been different. A reasonable probability is a

 probability sufficient to undermine confidence in the outcome.” Strickland, 466 U.S.

 at 694.

¶ 28 We begin by examining Allen’s assertion that his trial counsel unreasonably

 failed to investigate the crime scene evidence, which is contained within Claim III as

 supplemented and amended in his SMAR. This portion of Claim III is substantially

 based upon the evidence contained in the McCrary Report. McCrary was retained by

 Allen’s post-conviction counsel to independently assess the evidence discovered by

 law enforcement at the scene of Gailey’s death. Based upon his analysis of the crime

 scene evidence, McCrary concluded that portions of Smith’s testimony were

 incompatible with the physical evidence and, in his judgment, “unfathomable.”

 According to McCrary, the crime scene evidence “refute[s] Ms. Smith’s assertion that

 Mr. Gailey was assassinated in cold blood, never having got his gun out.” Instead, in

 McCrary’s opinion, “the totality of the evidence at the [crime] scene is more consistent

 with a dispute that deteriorated into a gunfight and significantly contradicts and

 discredits Ms. Smith’s story.”

¶ 29 Allen alleges his trial counsel were deficient for failing to obtain information

 regarding the inconsistencies between Smith’s testimony and the crime scene
 STATE V. ALLEN

 2021-NCSC-88

 Opinion of the Court

 evidence prior to trial. In Allen’s view, counsel’s failure to adequately investigate the

 crime scene prejudiced his case in at least two ways. First, it deprived him of the

 opportunity to choose to present testimony based upon the crime scene evidence

 which would have directly rebutted Smith’s account of Gailey’s death. Second, it

 deprived his counsel of the capacity to effectively cross-examine Smith on the

 discrepancies between her account and the physical evidence. The MAR court did not

 conduct an evidentiary hearing on this claim, and Allen seeks only a remand for an

 evidentiary hearing. Therefore, the question at this stage is not whether Allen has

 proven that he received IAC. Instead, the question is whether he has stated facts

 which, if proven true, would entitle him to relief. We conclude that he has.

¶ 30 An attorney can render IAC by failing to conduct an adequate investigation of

 the physical evidence of a crime. See, e.g., Elmore v. Ozmint, 661 F.3d 783, 864 (4th

 Cir. 2011) (“Because [the defendant] lawyers’ investigation into the State’s forensic

 evidence never started, there could be no reasonable strategic decision either to stop

 the investigation or to forgo use of the evidence that the investigation would have

 uncovered.”). Here, Allen has presented evidence which could support factual findings

 which could, in turn, establish a successful IAC claim. He has presented evidence

 supporting his contentions that (1) counsel were aware of the importance of the crime

 scene evidence before trial but unreasonably failed to follow up on these “red flags,”

 Rompilla v. Beard, 545 U.S. 374, 392 (2005); (2) counsel did not perform an
 STATE V. ALLEN

 2021-NCSC-88

 Opinion of the Court

 independent investigation of the crime scene evidence; (3) counsel’s conduct was

 unreasonable when judged against prevailing professional norms in capital cases,

 including those outlined in the American Bar Association’s guidelines; and (4)

 counsel’s unreasonable failure to investigate was prejudicial. Given the centrality of

 Smith’s testimony to the State’s case, if each of these factual contentions were proven

 to be true, Allen would be entitled to a new trial. See, e.g., Elmore, 661 F.3d at 870

 (“Though perhaps the jury would have yet believed the [State’s witnesses], there is a

 reasonable probability that the jury would have doubted the [witnesses’] account” had

 defense counsel presented contradictory forensic evidence); Rompilla, 545 U.S. at 376

 (“The undiscovered . . . evidence, taken as a whole, might well have influenced the

 jury’s appraisal of [the defendant’s] culpability, and the likelihood of a different result

 had the evidence gone in is sufficient to undermine confidence in the outcome actually

 reached . . . .” (cleaned up) (first quoting Wiggins v. Smith, 539 U.S. 510, 538 (2003);

 then quoting Strickland, 466 U.S. at 694)). Thus, the MAR court erred in summarily

 dismissing Allen’s guilt-innocence IAC claims.

¶ 31 The MAR court’s reasoning in support of its decision to summarily dismiss

 these claims is critically flawed. According to the MAR court, Allen’s counsel’s failure

 to consult with or present testimony from a crime scene expert resulted from a “sound

 tactical decision.” This “sound tactical decision” purportedly reflected the reasonable

 trial strategy of “focus[ing] on the doubt created by Smith’s gaps in memory, addiction
 STATE V. ALLEN

 2021-NCSC-88

 Opinion of the Court

 and use of controlled substances on the date of Gailey’s death, and failure to maintain

 a cohesive timeline, rather than attempting to prove Defendant’s innocence through

 the use of a crime scene analyst.”

¶ 32 It is correct that in considering an IAC claim, “a court must indulge a strong

 presumption that counsel’s conduct falls within the wide range of reasonable

 professional assistance.” Strickland, 466 U.S. at 689. However, this presumption is

 rebuttable. Once a defendant presents evidence rebutting the presumption of

 reasonableness, the court is not at liberty to invent for counsel a strategic justification

 which counsel does not offer and which the record does not disclose. See Wiggins, 539

 U.S. at 526–27 (rejecting “strategic” reasons that “the state courts and respondents

 all invoke to justify counsel’s limited pursuit of mitigating evidence [as] resembl[ing]

 more [of] a post hoc rationalization of counsel’s conduct than an accurate description

 of their deliberations prior to sentencing”).

¶ 33 In this case, Allen has presented direct evidence indicating his trial counsel’s

 decision not to adequately investigate the crime scene—and their resulting decision

 not to present evidence derived from an adequate investigation or use such evidence

 to impeach Smith’s testimony—was not a reasonable strategic choice. His SMAR

 included an affidavit from one of his two trial attorneys explicitly stating that he

 “do[es] not recall [either himself or Allen’s other attorney] making any strategic

 decisions to limit the cross-examination of the State’s witnesses, including Vanessa
 STATE V. ALLEN

 2021-NCSC-88

 Opinion of the Court

 Smith.” This directly undercuts the MAR court’s presently unsupported theory that

 counsel’s failure to investigate resulted from a “tactical decision” to focus on Smith’s

 lack of credibility due to her drug use.6 If it is true that trial counsel’s “failure to

 investigate thoroughly resulted from inattention, not reasoned strategic judgment,”

 then counsel’s performance was deficient. Wiggins, 539 U.S. at 526.

¶ 34 Even if trial counsel chose to pursue a “strategy” of focusing on Smith’s lack of

 credibility, counsel’s failure to adequately investigate the crime scene could still be

 unreasonable. Strickland, 466 U.S. at 690–91 (“[S]trategic choices made after less

 than complete investigation are reasonable precisely to the extent that reasonable

 professional judgments support the limitations on investigation.”). With the benefit

 of insights gleaned from the crime scene, counsel could have directly contradicted

 Smith’s account of Gailey’s death with tangible, extrinsic evidence, a tactic which

 would only serve a strategy centered around attacking Smith’s credibility. To answer

 the question of whether Allen’s counsel made a reasonable strategic judgment in

 foregoing a thorough investigation of the crime scene, the MAR court needed to

 6 The dissent advances the curious and novel position that because Allen’s trial
 counsel had represented other capital defendants without rendering IAC and had not been
 disciplined by the State Bar, Allen could not have received IAC at his trial or sentencing
 proceeding. The dissent cites no relevant authority for that proposition. The State never made
 this argument and we reject this contention. Obviously, the adequacy of an attorney’s
 representation in one trial does not establish the adequacy of an attorney’s representation in
 a different trial, nor does the IAC claim require that an attorney have been disciplined by the
 State Bar in order to demonstrate ineffective assistance. See, e.g., Strickland, 466 U.S. at 687
 (explaining that to prove IAC, a defendant must “show that counsel’s performance was
 deficient” and “that the deficient performance prejudiced the defense”).
 STATE V. ALLEN

 2021-NCSC-88

 Opinion of the Court

 resolve factual issues, a task our statutes do not permit it to undertake in these

 circumstances without first conducting an evidentiary hearing.

¶ 35 Alternatively, the MAR court rested its conclusion that Allen’s counsel was not

 deficient on the following brief statement Allen made during a colloquy with the trial

 court regarding his rights as a criminal defendant:

 THE COURT: Knowing that you have the right to present
 evidence and you have the right not to, what is your desire
 about presenting evidence in this case?

 MR. ALLEN: Well, I don’t know anything. I don’t know
 what happened, so I have nothing to contribute to it.

 According to the MAR court, this statement proves that “defense counsel[’s] decision

 not to call any witnesses [during] the guilt[-innocence] phase of Defendant’s trial was

 a tactical decision that was made after consultation with Defendant.” Even if this

 perfunctory exchange could possibly support the conclusion that counsel’s choices

 were strategic, it does not necessarily disprove Allen’s contention that counsel’s

 “tactical decision” was unreasonable, nor his argument that counsel could not

 reasonably make such an important “tactical decision” without first conducting an

 adequate investigation of the crime scene evidence.

¶ 36 The State’s arguments in support of the MAR court’s order are also

 unpersuasive. The State appears to argue that even if Allen’s counsel were deficient,

 Allen could not have been prejudiced because the crime scene evidence in no way

 detracted from the State’s overwhelming evidence of guilt. To begin with, Allen need
 STATE V. ALLEN

 2021-NCSC-88

 Opinion of the Court

 not present evidence which, if believed, would entirely exculpate him of all criminal

 conduct relating to Gailey’s killing. Allen was convicted of first-degree murder, which

 made him eligible to receive the death penalty. Yet the trial court also instructed on

 lesser included offenses for which he would not have been eligible to receive the death

 even if he were convicted. If counsel’s conduct resulted in Allen being convicted of

 first-degree murder rather than second-degree murder or voluntary manslaughter,

 then Allen was prejudiced.

¶ 37 Regardless, the State’s argument that Allen cannot prove prejudice rests on

 two erroneous premises. First, the State contends the McCrary Report cannot support

 Allen’s IAC claim because it failed to account for the State’s evidence indicating Allen

 shot Gailey “in the back at close range with a shotgun.” This assertion is belied by

 the text of the McCrary Report, which explicitly acknowledges the State’s medical

 examiner’s conclusion that Gailey was shot from “quite close, within a matter of a

 foot or so” and also from “several yards away.” McCrary’s conclusion that “the totality

 of the evidence at the [crime] scene is more consistent with a dispute that deteriorated

 into a gunfight” reflects his interpretation of all of the crime scene evidence, including

 the evidence the State relied upon in support of Allen’s conviction.

¶ 38 Second, the State argues that because there was evidence indicating Allen shot

 Gailey “in the back at close range with a shotgun,” no rational juror could possibly

 conclude that Allen committed anything other than first-degree murder. As the State
 STATE V. ALLEN

 2021-NCSC-88

 Opinion of the Court

 bluntly puts it, “[s]hooting someone in the back at close range with a shotgun is not

 a gunfight, it is premeditated and deliberated murder.” This argument incorrectly

 suggests that Allen’s intent has been established as a matter of law by the manner of

 Gailey’s death. The State disregards more than a century of precedent explaining

 that “[w]hether an act is the result of premeditation and deliberation is a fact to be

 found by the jury, and not a conclusion of law to be drawn by the court.” State v.

 Daniels, 134 N.C. 671, 674 (1904).

¶ 39 While the jury could have inferred that Allen acted with premeditation and

 deliberation based upon “the distance from which the shot was fired and . . . the

 weapon and ammunition used,” State v. Reece, 54 N.C. App. 400, 406 (1981), these

 facts would not have precluded Allen from persuading the jury to draw a different

 inference, see State v. Walker, 332 N.C. 520, 533 (1992) (concluding that the “nature

 of the killing, a contact shot to the temple, indicates a premeditated and deliberate

 act of homicide . . . [which] support[s] a reasonable inference” of intent (emphases

 added)). The nature of Gailey’s wounds is not necessarily inconsistent with the

 alternative theory propounded by McCrary of a drug-fueled confrontation that turned

 fatal, a theory Allen alleges is supported by physical evidence from the crime scene,
 STATE V. ALLEN

 2021-NCSC-88

 Opinion of the Court

 such as the evidence demonstrating Gailey fired his weapon and the unexplained

 presence of a hunting knife.7

¶ 40 As described above, in addition to his argument based upon counsel’s

 purported failure to adequately investigate the crime scene evidence, Allen raises

 other related IAC claims challenging other aspects of his trial counsel’s performance

 during the guilt-innocence phase of his trial. Having already determined that the

 MAR court erred in summarily denying one of Allen’s IAC claims, we need not

 address his other claims here without the benefit of a more fully developed factual

 record. Applying the two-prong Strickland test, we conclude that Allen has presented

 evidence supporting his contention that his attorneys provided IAC during the guilt-

 innocence phase of his trial, creating factual disputes which, if resolved in his favor,

 would entitle him to relief. At a minimum, he is entitled to further develop these

 claims during an evidentiary hearing. Todd, 369 N.C. at 712 (remanding for an

 evidentiary hearing because “the record before th[e] Court [was] not thoroughly

 developed regarding defendant’s appellate counsel’s reasonableness, or lack thereof,

 in choosing not” to pursue an argument).

 7 Further, if the evidence could only support the conclusion Allen had committed first-

 degree murder, the trial court would have had no reason to instruct on the lesser included
 offenses of second-degree murder and voluntary manslaughter, neither of which requires the
 State to prove the killing was committed with premeditation and deliberation.
 STATE V. ALLEN

 2021-NCSC-88

 Opinion of the Court

¶ 41 Accordingly, we vacate the relevant portions of the MAR court’s order

 summarily dismissing Allen’s guilt-innocence IAC claims. Because “an evidentiary

 hearing is required unless the motion presents assertions of fact which will entitle

 the defendant to no relief even if resolved in his favor, or the motion presents only

 questions of law, or the motion is made pursuant to N.C.G.S. § 15A-1414,” McHone,

 348 N.C. at 258 (emphasis added), we remand to the MAR court to conduct an

 evidentiary hearing. At the evidentiary hearing, the MAR court will determine

 whether Allen’s counsel were deficient and, if so, whether counsel’s deficient

 performance was prejudicial.

¶ 42 If the MAR court reaches the question of prejudice, the MAR court must

 examine whether any instances of deficient performance at discrete moments in the

 trial prejudiced Allen when considered both individually and cumulatively. We reject

 the MAR court’s erroneous conclusion that cumulative prejudice is unavailable to a

 defendant asserting multiple IAC claims. We have previously acknowledged

 cumulative prejudice IAC claims, see, e.g., State v. Thompson, 359 N.C. 77, 121–22

 (2004) (recognizing cumulative prejudice argument but dismissing IAC claim on other

 grounds), as has the United States Supreme Court in Williams v. Taylor, 529 U.S.

 362, 396–98 (2000). Therefore, we adopt the reasoning of the unanimous Court of

 Appeals panel which recently concluded that “because [IAC] claims focus on the

 reasonableness of counsel’s performance, courts can consider the cumulative effect of
 STATE V. ALLEN

 2021-NCSC-88

 Opinion of the Court

 alleged errors by counsel.” State v. Lane, 271 N.C. App. 307, 316, review dismissed,

 376 N.C. 540 (2020), review denied, 851 S.E.2d 624 (N.C. 2020). 8 To be clear, only

 instances of counsel’s deficient performance may be aggregated to prove cumulative

 prejudice—the cumulative prejudice doctrine is not an invitation to reweigh all of the

 choices counsel made throughout the course of representing a defendant.

¶ 43 We next address the portions of the “Order Summarily Dismissing Certain

 Claims of Defendant’s Motion for Appropriate Relief and Supplemental Motion for

 Appropriate Relief” disposing of Claims I, IV, V, and XII.

 1. Knowing presentation of false and misleading evidence.

¶ 44 In Claim I of his MAR and SMAR, Allen alleges that the State violated his

 constitutional rights by allowing Smith to testify in a manner the State knew to be

 8 Our decision to recognize cumulative prejudice claims is based upon our own
 interpretation of Strickland and IAC doctrine, and is in accord with numerous federal and
 state appellate decisions (including the recent decision by our Court of Appeals), none binding
 on this Court, but which we find persuasive. See, e.g., Williams v. Washington, 59 F.3d 673,
 681 (7th Cir. 1995) (“In making this showing [of prejudice], a petitioner may demonstrate
 that the cumulative effect of counsel's individual acts or omissions was substantial enough
 to meet Strickland’s test.”); Rodriguez v. Hoke, 928 F.2d 534, 538 (2d Cir. 1991) (“Since [the
 defendant’s] claim of ineffective assistance of counsel can turn on the cumulative effect of all
 of counsel's actions, all his allegations of ineffective assistance should be reviewed together.”);
 Ewing v. Williams, 596 F.2d 391, 395 (9th Cir. 1979) (“[E]ven where, as here, several specific
 errors are found, it is the duty of the Court to make a finding as to prejudice, although this
 finding may either be ‘cumulative’ or focus on one discrete blunder in itself prejudicial.”);
 State v. Clay, 824 N.W.2d 488, 500 (Iowa 2012) (“[W]e [ ] look to the cumulative effect of
 counsel's errors to determine whether the defendant satisfied the prejudice prong of the
 Strickland test.”); State v. Thiel, 2003 WI 111, ¶ 4, 264 Wis. 2d 571, 581, 665 N.W.2d 305,
 311 (“We conclude that counsel's performance was deficient in several respects and that the
 cumulative effect of the deficiencies prejudiced [the defendant’s] defense to an extent that it
 undermines our confidence in the outcome of the trial.”).
 STATE V. ALLEN

 2021-NCSC-88

 Opinion of the Court

 false and misleading. In support of his claim, Allen relies principally on post-

 conviction affidavits from individuals whose account of events surrounding Gailey’s

 death differ from and conflict with Smith’s recollection. The MAR court determined

 this claim was procedurally barred pursuant to N.C.G.S. § 15A-1419(a)(3), which

 provides in relevant part that it is “grounds for the denial of a motion for appropriate

 relief, including motions filed in capital cases . . . [if u]pon a previous appeal the

 defendant was in a position to adequately raise the ground or issue underlying the

 present motion but did not do so.” In the alternative, the MAR court concluded this

 claim was meritless.

¶ 45 On direct appeal, Allen alleged that the State presented two portions of Smith’s

 testimony which it knew to be false and misleading. Allen, 360 N.C. at 305. He argued

 that the State knew Smith’s account of waiting hours for Gailey to die and hearing

 Gailey “empty his gun out” as she left the Uwharrie National Forest was false and

 misleading in light of the medical examiner’s testimony that Gailey could not have

 survived more than a brief time after being shot. Id. We rejected this claim, noting

 the “difference between the knowing presentation of false testimony and knowing

 that testimony conflicts in some manner.” Id.

¶ 46 Assuming without deciding that Claim I is not procedurally barred—and even

 if the facts alleged in his supporting affidavits were proven to be true—the same

 distinction we recognized on direct appeal controls our disposition of Allen’s MAR
 STATE V. ALLEN

 2021-NCSC-88

 Opinion of the Court

 claim. We must again conclude that “nothing in the record tends to show the [State]

 knew [Smith’s] testimony was false.” Id. at 306. Thus, Allen cannot meet his burden

 of proving that the State “knowingly and intentionally used” false and misleading

 testimony “to obtain his conviction.” State v. Williams, 341 N.C. 1, 16 (1995).

 Accordingly, we affirm the portion of the MAR court’s order summarily dismissing

 Claim I.

 2. Failure to produce exculpatory material before trial in violation of
 Brady v. Maryland.

¶ 47 In Claim IV of his MAR, Allen alleges that the State violated his constitutional

 rights as established in Brady v. Maryland, 373 U.S. 83 (1963). To establish a

 successful Brady claim, a defendant must prove that the State withheld evidence

 which would have been “favorable” to the defendant, either as impeachment evidence

 or exculpatory evidence, and that the evidence was “material,” meaning “there is a

 ‘reasonable probability’ of a different result had the evidence been disclosed.” State v.

 Williams, 362 N.C. 628, 636 (2008) (quoting State v. Berry, 356 N.C. 490, 517 (2002)).

 A defendant’s burden . . . is more than showing that
 withheld evidence might have affected the verdict, but less
 than showing that withheld evidence more likely than not
 affected the verdict. When we consider whether there was
 a reasonable probability that the undisclosed evidence
 would have altered the jury’s verdict, we consider the
 context of the entire record.

 State v. Best, 376 N.C. 340, 349 (2020) (cleaned up) (quoting United States v. Agurs,

 427 U.S. 97, 112 (1976)), petition for cert. filed, No. 20-1608 (U.S. May 18, 2021).
 STATE V. ALLEN

 2021-NCSC-88

 Opinion of the Court

¶ 48 The basis for Allen’s Brady claim was that the State provided an incomplete

 account of Page’s criminal record prior to putting him on the stand to testify.

 Although the State did convey information regarding other of Page’s prior criminal

 convictions, the State failed to disclose Page’s two prior criminal convictions for

 misdemeanor injury to personal property.

¶ 49 We are persuaded that Allen cannot prove these omitted prior convictions were

 “material” within the meaning of Brady. When Page testified, the jury was made

 aware of the fact that Page had previously been convicted of other, more serious

 crimes, that he had been charged as an accessory after the fact to Gailey’s murder,

 and that he had initially made false statements to law enforcement regarding his

 interactions with Allen. Informing the jury that Page had also committed two other

 minor crimes could not have meaningfully altered the jury’s perception of Page’s

 credibility as a witness. Under these circumstances, where the withheld information

 is substantially similar to information properly disclosed to counsel and presented to

 the jury, we conclude that Allen cannot “show[ ] that the favorable evidence could

 reasonably be taken to put the whole case in such a different light as to undermine

 confidence in the verdict.” Kyles v. Whitley, 514 U.S. 419, 435 (1995).

 3. The trial court’s jurisdiction to try, convict, and sentence Allen.

¶ 50 In Claim V of his MAR, Allen alleges that his short-form indictment was

 constitutionally improper for failing to fully state the elements of first-degree murder
 STATE V. ALLEN

 2021-NCSC-88

 Opinion of the Court

 and the aggravating circumstances to be submitted to the jury. Allen raised this exact

 claim on direct appeal, which we denied, explaining that this Court has “consistently

 ruled short-form indictments for first-degree murder are permissible under . . . the

 North Carolina and United States Constitutions.” Allen, 360 N.C. at 316. Since

 Allen’s direct appeal, there has been no retroactively effective change in the

 applicable law. Accordingly, we affirm the portion of the MAR court’s order

 summarily dismissing this claim on the ground that it is procedurally barred

 pursuant to N.C.G.S. § 15A-1419(a)(2).

 4. Impermissible shackling in view of the jury.

¶ 51 In Claim XII of his SMAR, Allen alleged that he was impermissibly shackled

 in view of the jury without justification, in violation of his constitutional rights. In

 support of his claim, Allen produced an affidavit from one juror stating that she

 “know[s] that . . . Allen had some type of shackles or restraints on during the trial”

 and an affidavit from an alternate juror stating that he “noticed . . . Allen’s

 appearance and demeanor in the courtroom . . . [and] saw that he had tattoos on his

 body and that he was wearing leg irons.” In addition, Allen’s post-conviction counsel

 disclosed to the MAR court that a different juror “told post-conviction investigators

 that [Allen] was shackled and ‘there were deputies all around him’ ” but refused to

 sign an affidavit. The State argued, and the MAR court agreed, that Allen’s claim was

 procedurally barred under N.C.G.S. § 15A-1419(a)(3). In the alternative, the MAR
 STATE V. ALLEN

 2021-NCSC-88

 Opinion of the Court

 court concluded that even if Allen’s shackling claim was not procedurally barred, it

 was meritless.

¶ 52 Under both the North Carolina Constitution and the Constitution of the United

 States, a defendant may not be visibly shackled in the courtroom in the presence of

 the jury unless there is a special need for restraints specific to the defendant. See

 State v. Tolley, 290 N.C. 349, 367–68 (1976); see also Deck v. Missouri, 544 U.S. 622,

 626 (2005) (“The law has long forbidden routine use of visible shackles during the

 guilt phase; it permits a State to shackle a criminal defendant only in the presence of

 a special need.”). Mirroring this constitutional rule, North Carolina law permits a

 trial court to order a defendant restrained in the courtroom only when doing so is

 “reasonably necessary to maintain order, prevent the defendant’s escape, or provide

 for the safety of persons,” and only after the trial court “[e]nter[s] in the record out of

 the presence of the jury and in the presence of the person to be restrained and his

 counsel, if any, the reasons for” imposing the restraints. N.C.G.S. § 15A-1031 (2019).

 The defendant must also be afforded an opportunity to be heard on the matter, and

 the trial court must instruct the jurors “that the restraint is not to be considered in

 weighing evidence or determining the issue of guilt.” Id.; see also Sigmon v. Stirling,

 956 F.3d 183, 202 (4th Cir. 2020) (noting the “longstanding” constitutional

 requirement “for the trial court to articulate a reason for [imposing] visible restraints

 on the record”). Typically, adherence to this mandatory statutory procedure ensures
 STATE V. ALLEN

 2021-NCSC-88

 Opinion of the Court

 that evidence of a defendant’s shackling appears in the record and transcript of trial,

 enabling the defendant to challenge the trial court’s decision to impose restraints on

 direct appeal.

¶ 53 In this case, however, there is no evidence in the record and transcript

 suggesting Allen was restrained at all during trial. The trial court did not enter

 factual findings as would have been required prior to ordering Allen shackled

 pursuant to N.C.G.S. § 15A-1031. The record and transcript do not reflect that Allen

 entered an objection or otherwise noted that he was restrained in a manner visible to

 the jury at any point during trial. The record and transcript reflect that Allen did not

 request and the trial court did not give a jury instruction that his appearance in

 restraints was not to be considered as evidence of his guilt.

¶ 54 Consistent with the logic of our decision in State v. Hyman, 371 N.C. 363

 (2018), we conclude that the MAR court erred in summarily dismissing Allen’s

 shackling claim as procedurally barred. We reject the State’s invitation to construe

 N.C.G.S. § 15A-1419(a)(3) broadly as a general prohibition on post-conviction review

 of any claim not raised on direct appeal. Instead, we agree with Allen that a claim is

 not procedurally barred when the record on appeal is completely silent as to

 dispositive facts necessary to prove or disprove the claim. Because the record does not

 reveal the information necessary to determine whether Allen’s claim is procedurally

 barred, the MAR court erred in summarily concluding that Allen was “in a position
 STATE V. ALLEN

 2021-NCSC-88

 Opinion of the Court

 to adequately raise the ground or issue underlying the [MAR claim]” on direct appeal

 within the meaning of N.C.G.S. § 15A-1419(a)(3).

¶ 55 In Hyman, we held that a defendant was not procedurally barred from raising

 an IAC claim on post-conviction review, even though he had not raised the claim on

 direct appeal. Hyman, 371 N.C. at 383. In that case, the defendant’s IAC claim

 challenged his attorney’s failure to withdraw from representing him during trial. Id.

 at 381. The attorney worked at a law firm that had previously represented a witness

 who was testifying at the defendant’s trial and whose testimony inculpated the

 defendant. Id. at 367–68. During cross-examination, an exchange between counsel

 and the inculpating witness suggested that the witness had previously conveyed a

 different account of the events in question than the one the witness was offering at

 trial. Id. at 372. The defendant argued that his attorney should have withdrawn from

 the representation and testified regarding the content of this alleged prior

 conversation. Id. at 367.

¶ 56 In concluding that the Hyman defendant’s claim was not procedurally barred,

 we explained that in order to prove that his attorney rendered IAC, the defendant

 was required to prove numerous facts, including that (1) the alleged pretrial

 conversation between the witness and the defendant’s attorney had indeed occurred;

 (2) the witness made statements inconsistent with his trial testimony during said

 conversation; (3) the attorney did not have a strategic reason for failing to withdraw
 STATE V. ALLEN

 2021-NCSC-88

 Opinion of the Court

 from representing the defendant; and (4) the testimony the attorney would have been

 able to deliver would have benefitted the defendant. Id. at 384–85. We reasoned that

 because “[t]he record developed at trial did not contain any information affirmatively

 tending to show” any of those facts, the record did not “contain[ ] sufficient

 information to permit the reviewing court to make all the factual and legal

 determinations necessary to allow a proper resolution of the claim in question.” Id. at

 383–84 (emphasis added). We thus held that the procedural bar set forth in N.C.G.S.

 § 15A-1419(a)(3) did not apply. Id. at 385.

¶ 57 This reasoning requires us to hold that the MAR court erred in summarily

 concluding that Allen’s shackling claim was procedurally barred. To assess Allen’s

 shackling claim, three threshold facts must first be established. First, Allen must

 show that he was indeed shackled in the courtroom. Second, he must establish that

 the shackles were visible to the jury. Third, he must establish whether or not his trial

 counsel was aware that he was shackled in a way that was visible to the jury in the

 courtroom. Only when these facts have been established is it possible for a reviewing

 court to ascertain (1) whether or not the claim is procedurally barred, and (2) whether

 or not the trial court imposed restraints under circumstances which undermined the
 STATE V. ALLEN

 2021-NCSC-88

 Opinion of the Court

 fairness of the defendant’s trial and the validity of its outcome.9 See State v. Holmes,

 355 N.C. 719, 729 (2002) (holding that where shackles are not visible to the jury, “the

 risk is negligible that the restraint undermined the dignity of the trial process or

 created prejudice in the minds of the jurors by suggesting that defendant is a

 dangerous person”).

¶ 58 The record and transcript from Allen’s trial are devoid of any information

 which would allow a court to resolve these central factual questions. If Allen had

 brought his claim on direct appeal, the only way a reviewing court could assess his

 claim would be by guessing or presuming answers. This is precisely the kind of

 circumstance in which further factual development is necessary to reach an informed

 judgment of a defendant’s claim. As Hyman illustrates, given the affidavits Allen filed

 which indicate he may be able to prove the facts necessary to prevail on his claim, the

 proper course is to analyze Allen’s shackling claim after an evidentiary hearing to

 determine the central facts at issue, rather than ruling without receiving the

 9 We do not have before us the question of whether counsel’s failure to object to the

 imposition of visible restraints could form the basis of an IAC claim. See, e.g., Roche v. Davis,
 291 F.3d 473, 483 (7th Cir. 2002) (concluding that a capital defendant’s counsel was deficient
 under Strickland because “not only did counsel fail to object to [the defendant’s] shackling,
 he also failed to ensure that [the defendant’s] shackles would not be visible to the jury while
 [the defendant] was sitting at counsel’s table during the entire trial”); Jackson v. Washington,
 270 Va. 269, 280 (2005) (concluding that “counsel’s failure to object to [the defendant] being
 compelled to stand trial before the jury in jail clothes” rendered IAC). We leave it to the MAR
 court in the first instance to determine whether Allen should be permitted to again amend
 his MAR to include an allegation that he received IAC based upon a failure to object to his
 alleged shackling in view of the jury.
 STATE V. ALLEN

 2021-NCSC-88

 Opinion of the Court

 necessary facts.

¶ 59 The State argues that we should ignore the impossibility of resolving Allen’s

 claim on the existing record because the insufficiency of the record purportedly

 results from Allen’s own failure to supply at trial or on appeal the necessary

 information. Yet this presumes that either Allen or his trial counsel possessed all of

 the information required to perfect the record on appeal. Even though Allen and his

 counsel would have known whether Allen was shackled at trial, they may not have

 known whether his shackles were visible to the jury or whether, in the absence of a

 hearing on the matter, he was legally compelled to be shackled in the courtroom. More

 facts are needed to ascertain whether Allen was in an adequate position to raise this

 claim on direct appeal.

¶ 60 The State argues in the alternative that Allen is precluded from raising his

 shackling claim on post-conviction review because he failed to object to his purported

 shackling at trial. This argument misses the mark. Subsection 15A-1419(a)(3)

 contains no language restricting post-conviction review to claims that were preserved

 at trial. Indeed, claims preserved at trial can always be brought on direct appeal and

 the statute would, construed in this way, effectively prevent post-conviction review of

 all claims. The legislature did not include any language suggesting that a defendant’s

 failure to object at trial triggers application of the procedural bar. We reject the

 State’s invitation to read into the statute an extra-textual requirement the legislature
 STATE V. ALLEN

 2021-NCSC-88

 Opinion of the Court

 understandably did not see fit to include.

¶ 61 We have previously rejected and continue to disclaim any interpretation of

 N.C.G.S. § 15A-1419(a)(1)–(4) which imposes “a general rule that any claim not

 brought on direct appeal is forfeited on state collateral review.” State v. Fair, 354 N.C.

 131, 166 (2001) (quoting McCarver v. Lee, 221 F.3d 583, 589 (4th Cir. 2000), cert.

 denied, 531 U.S. 1089 (2001)). The rule is not that any claim not litigated on direct

 appeal cannot be brought in post-conviction proceedings. The rule is that such claims

 may be brought unless one or more of the procedural bars set forth in the relevant

 statutes applies and is not waived. On the present record, we are unable to conclude

 that Allen was “in a position to adequately raise the ground or issue underlying” his

 shackling claim on direct appeal but failed to do so. N.C.G.S. § 15A-1419(a)(3).

¶ 62 Having examined the facts and circumstances of Allen’s shackling claim, we

 conclude that the trial court erred in summarily dismissing Allen’s claim as

 procedurally barred because the record does not contain facts necessary to a fair

 resolution of the claim. Because Allen has presented sufficient evidence which would

 entitle him to an evidentiary hearing in the event that he can demonstrate his claim

 is not procedurally barred, we vacate the portion of the MAR court’s order summarily

 dismissing Claim XII of his SMAR and remand to the trial court to conduct an

 evidentiary hearing to determine whether his shackling claim is procedurally barred

 and whether the claim has merit. See McHone, 348 N.C. at 258. At the hearing, as an
 STATE V. ALLEN

 2021-NCSC-88

 Opinion of the Court

 initial matter, Allen will have the burden of proving by a preponderance of the

 evidence (1) that he was shackled, (2) that he was shackled in the courtroom in the

 presence of, and in a manner visible to, the jury, and (3) whether his counsel knew he

 was impermissibly shackled in the courtroom and in the view of the jury.

 B. Claims regarding trial counsel’s access to Smith’s medical records.

¶ 63 At trial, Allen’s counsel sought access to records produced during Smith’s stay

 at the Black Mountain Treatment Center in October 1993, as well as records from a

 period of involuntary commitment she experienced in Stanley County. The trial court

 granted the order but provided that when the documents were produced, the court

 would review them in camera to determine whether they should be disclosed to

 counsel. After conducting this review, the trial court released only the records of

 Smith’s involuntary commitment. The trial court withheld all records obtained from

 the Black Mountain Treatment Center on the grounds that they contained no

 evidence indicating Smith suffered from any pertinent mental health conditions (e.g.,

 conditions which would affect her credibility as a witness), nor any evidence

 indicating substance abuse issues distinct from what Smith herself had admitted to

 at trial.

¶ 64 In his SMAR, Allen supplemented Claim III of his original MAR to include

 additional subclaims relating to the trial court’s refusal to disclose the Black
 STATE V. ALLEN

 2021-NCSC-88

 Opinion of the Court

 Mountain Treatment Center records.10 While the precise nature and scope of the

 subclaims in Claim III vary, each is predicated on Allen’s antecedent argument that

 the trial court violated his constitutional rights by failing to release the records to his

 counsel after conducting only an in camera review.11

¶ 65 After determining that Allen was not procedurally barred from pursuing these

 subclaims, the MAR court conducted a “limited evidentiary hearing to determine if

 Defendant suffered any sufficient prejudice to warrant a full evidentiary hearing on

 SMAR sub-claims 3H, 3J, 3K and that portion of sub-claim 3I that relates to the in

 camera examination of the sealed mental health and substance abuse records of

 State’s trial witness Vanessa Smith.” At this hearing, Allen presented testimony from

 Dr. Warren, one of his mental health experts. Dr. Warren testified that although

 Smith was not formally diagnosed with any pertinent mental health conditions at the

 Black Mountain Treatment Center, the records contained evidence that she suffered

 from borderline and antisocial personality disorders. He explained that he based his

 10 Although these allegations are contained within a broader claim alleging IAC
 during the guilt-innocence phase of trial, the MAR court conducted an evidentiary hearing
 solely on these subclaims.
 11 Subclaim 3H contends that defendant’s trial counsel were rendered ineffective by

 the trial court’s unconstitutional refusal to reveal the Black Mountain Treatment Center
 records; Subclaim 3J contends that the trial court impermissibly refused Allen the
 opportunity to conduct voir dire of Smith and Dr. Warren regarding the importance of the
 records prior to the trial court’s determination not to release the records to Allen; Subclaim
 3K contends that Allen should have been allowed to submit extrinsic evidence of Smith’s
 unreliability contained in the records; and the relevant portion of Subclaim 3I contends that
 Allen’s counsel were ineffective because they cross-examined Smith without knowledge of the
 information contained in the records.
 STATE V. ALLEN

 2021-NCSC-88

 Opinion of the Court

 conclusion on the varying and conflicting statements Smith made to staff which were

 contained within the records, as well as the staff’s description of Smith as “spiritually

 bankrupt,” which he asserted was a term of art used by mental health professionals

 to refer to an individual who suffers from certain mental illnesses. The parties

 subsequently submitted post-hearing briefs. Ultimately, the MAR court entered an

 order containing numerous findings of fact in support of its conclusion of law that

 Allen “has failed to establish that he suffered any sufficient prejudice to warrant a

 full evidentiary hearing on [SMAR Subclaims 3H, 3J, 3K and the relevant portion of

 3I].” The MAR court dismissed these subclaims.

¶ 66 There were two bases for the MAR court’s conclusion that Allen could not have

 been prejudiced by the trial court’s refusal to convey Smith’s Black Mountain

 Treatment Center records. First, the MAR court found that the records were “bereft

 of any evidence to support an Axis II Personality B Complex Array diagnosis” and

 that Dr. Warren’s attestations to the contrary were “wholly unpersuasive.” Second,

 the MAR court found that Allen was permitted to “vigorously cross-examine Smith

 regarding her extensive abuse of several controlled substances, her abuse of alcohol,

 her early departure from a drug treatment facility, and several other topics meant to

 impugn her credibility.”

¶ 67 We read the MAR court’s findings of fact collectively as determining that (1)

 the Black Mountain Treatment Center records did not contain evidence indicating
 STATE V. ALLEN

 2021-NCSC-88

 Opinion of the Court

 Smith suffered from a pertinent mental health condition, and (2) the records did not

 contain evidence regarding Smith’s substance abuse that meaningfully differed from

 the information Smith herself disclosed to the jury during her testimony. In the MAR

 court’s view, because the records did not supply an alternative basis for impeaching

 Smith’s credibility (evidence of a pertinent mental health condition)—and because

 the other information the records contained was largely duplicative of Smith’s

 testimony (evidence of her substance abuse disorders)—Allen could not have been

 prejudiced by the trial court’s failure to release the records.

¶ 68 We reiterate that when the MAR court has entered findings of fact in support

 of its conclusions of law, our review is limited to “determin[ing] whether the findings

 of fact are supported by evidence, whether the findings of fact support the conclusions

 of law, and whether the conclusions of law support the order entered by the trial

 court.” Stevens, 305 N.C. at 720. Our inquiry does not change when, as in this case,

 the MAR court chooses to bifurcate its proceedings and first conducts a limited

 evidentiary hearing on a single potentially dispositive issue, as opposed to

 immediately conducting a full evidentiary hearing on all issues associated with a
 STATE V. ALLEN

 2021-NCSC-88

 Opinion of the Court

 claim.12 Examining the MAR court’s findings of fact, we conclude that they are

 supported by the evidence, that the findings support the MAR court’s conclusions of

 law, and that the conclusions of law in turn justify the order dismissing these

 subclaims.

¶ 69 Although Dr. Warren asserted that the treatment records contained

 information tending to show Smith suffered from a pertinent mental health condition,

 the MAR court was entitled to disbelieve his testimony. The MAR court’s contrary

 inference is supported by the contents of the records themselves, which do not contain

 any reference to or diagnosis of any pertinent mental health disorder, even though

 Smith was examined by multiple physicians. Similarly, although the records

 contained information illustrating the severity and persistence of Smith’s substance

 abuse issues, the transcript of Smith’s cross-examination at trial supports the trial

 court’s finding that the jury was already aware of the extent of her history of chronic

 substance abuse issues and that the medical records would have merely been

 cumulative documentation of an uncontested fact. These findings support the

 12 Allen does argue that the MAR court erred by conducting a limited evidentiary

 hearing, instead of a full evidentiary hearing. However, Allen does not provide support for
 his contention that in conducting a limited hearing, the MAR court “deprived Allen of a full
 opportunity to support his factual allegations that he was entitled to a new trial.” Nor does
 he identify how the limited evidentiary hearing—and the MAR court’s subsequent request
 for post-hearing briefs and its allowance of the further offer of proof from Allen’s post-
 conviction counsel regarding the records from another mental health expert, Dr. Herfkens—
 purportedly fell short of what is required under N.C.G.S. § 15A-1420(c)(1)–(4). Accordingly,
 we find no merit in his contention that the MAR court’s handling of these subclaims violated
 his constitutional rights.
 STATE V. ALLEN

 2021-NCSC-88

 Opinion of the Court

 conclusion that Allen “has failed to establish that the trial court’s withholding of the

 Black Mountain [Treatment Center] Records from his trial counsel and the State

 violated any of his constitutional rights or deprived Defendant of a fair trial.”

 Accordingly, we affirm the Order Granting State’s Motion to Dismiss Claims 3H, 3J,

 3K, and a Portion of 3I of Defendant’s Supplemental Motion for Appropriate Relief.

 C. Ineffective assistance of counsel during the sentencing phase.

¶ 70 Allen raised three distinct IAC claims regarding the sentencing phase of his

 trial. First, in Claim VII, Allen argued that his trial counsel were ineffective for

 failing to elicit testimony from a mental health expert to explain the significance of

 lay witness testimony and other evidence presented to the jury at sentencing. Second,

 in Claim VIII, Allen argued that his trial counsel were ineffective for failing to

 adequately investigate and present available mitigation evidence, including by failing

 to meet with and present testimony from various friends, family members, and

 acquaintances of Allen. Third, in Claim IX, Allen argued that his trial counsel were

 ineffective for failing to adequately prepare witnesses to testify during the sentencing

 hearing. In dismissing each of these claims, the MAR court concluded as a matter of

 law that Allen’s counsel were not deficient and that even if they were deficient, any

 deficient performance could not have been prejudicial.

¶ 71 The familiar two-part Strickland test also applies in examining Allen’s

 sentencing-phase IAC claims. However, because the MAR court conducted an
 STATE V. ALLEN

 2021-NCSC-88

 Opinion of the Court

 evidentiary hearing, our review of these claims is again limited to “determin[ing]

 whether the findings of fact are supported by evidence, whether the findings of fact

 support the conclusions of law, and whether the conclusions of law support the order

 entered by the trial court.” Matthews, 358 N.C. at 105–06 (quoting Stevens, 305 at

 720). Here, evidence in the record supports the MAR court’s findings of fact on each

 claim. These findings in fact in turn support the conclusion of law that Allen did not

 receive IAC at sentencing.

¶ 72 Regarding Claim VII, we find dispositive the MAR court’s finding of fact that

 in retaining two mental health experts who attempted to examine Allen and

 investigate his mental health by interviewing other sources, Allen’s trial counsel

 made a reasonable investigation into Defendant’s mental
 health and background, but Defendant’s reluctance to
 complete psychological testing and refusal to fully comply
 with Dr. Warren’s evaluation, coupled with the lack of
 evidence that Defendant suffered from a mental health
 disorder that would assist in his defense, led to [the
 experts] not being called as . . . mental health expert[s] at
 Defendant’s capital sentencing proceeding. Under these
 circumstances, any decision trial counsel made not to call
 a mental health expert at Defendant’s capital sentencing
 proceeding was reasonable.

 A defendant’s reluctance to cooperate with a mental health professional during

 sentencing does not absolve counsel of its duty to adequately investigate relevant

 mitigating circumstances. However, where the record contains no evidence tending

 to suggest the defendant suffers from a pertinent mental health condition and
 STATE V. ALLEN

 2021-NCSC-88

 Opinion of the Court

 defendant’s counsel has retained a mental health expert who diligently attempted to

 elicit relevant information from both the defendant and the defendant’s

 acquaintances, we cannot say that “no competent attorney” would fail to present

 evidence from the mental health expert at sentencing. Premo v. Moore, 562 U.S. 115,

 124 (2011) (explaining that whether “no competent attorney would think a [foregone

 trial strategy] would have failed . . . is the relevant question under Strickland”).

¶ 73 Regarding Claim VIII, we note the MAR court’s finding that the additional

 witnesses Allen claims his counsel failed to present testimony from

 either (1) did not know Defendant very well, (2) had
 substantial character flaws that would have weakened
 Defendant’s mitigation case, (3) would present only
 cumulative evidence, (4) did not present valid mitigating
 evidence, or (5) did not fit the mitigation strategy trial
 counsel chose to pursue at sentencing.

 This finding is both supported by evidence in the record and is sufficient to sustain

 the conclusion that counsel’s failure to call these witnesses could not have been

 prejudicial.

¶ 74 Finally, regarding Claim IX, the findings of fact support the conclusion of law

 that Allen cannot prove prejudice. We affirm the MAR court’s conclusion that Allen

 failed to meet his “burden of proving by a preponderance of the evidence” that the

 “nature and extent of the testimony that” the testifying witnesses would have offered

 had they been better prepared for sentencing could reasonably have altered the

 outcome of his sentencing proceeding. Hyman, 371 N.C. at 386. Accordingly, we
 STATE V. ALLEN

 2021-NCSC-88

 Opinion of the Court

 affirm the order dismissing Allen’s claims alleging IAC during the sentencing phase.

 III. Conclusion

¶ 75 We hold that the MAR court erred in summarily dismissing Allen’s guilt-

 innocence phase IAC claims without an evidentiary hearing. Because Allen has

 presented evidence which, if proven true would entitle him to relief, Allen is entitled

 to an evidentiary hearing in accordance with the mandate of N.C.G.S. § 15A-

 1420(c)(1) and McHone, 348 N.C. at 258. We also hold that the MAR court erred in

 dismissing Allen’s shackling claim as procedurally barred without conducting an

 evidentiary hearing to establish facts without which the claim could not fairly be

 resolved. Therefore, we vacate the portions of the MAR court’s orders summarily

 dismissing Claims II, VI, X, XI, XII and the portions of Claim III not addressed during

 the limited evidentiary hearing, and we remand to the MAR court to conduct an

 evidentiary hearing. We affirm the MAR court’s order dismissing Allen’s other claims

 and subclaims.

 AFFIRMED IN PART; VACATED IN PART AND REMANDED.
 Justice BERGER dissenting.

¶ 76 State v. McHone is the anchor to the majority’s claim that it is compelled to

 remand this case to the trial court for an evidentiary hearing. Contrary to the

 majority’s assertions, this Court did not remand McHone for an evidentiary hearing

 but rather for findings of fact based on materials contained in the record. See State

 v. McHone, 348 N.C. 254, 259, 499 S.E.2d 761, 764 (1998). McHone, in clear and

 unambiguous language, “remand[ed] this case to that court in order that it may make

 findings of fact, inter alia, as to whether defendant or defendant’s counsel was served

 with a copy of the original proposed order.” Id. (emphasis added). It is only by virtue

 of the majority’s gross misreading of McHone that the stunning leap can be made

 from this language to the requirement of an evidentiary hearing in every motion for

 appropriate relief.

¶ 77 In addition, the majority claims that McHone compels review of motions for

 appropriate relief “in the light most favorable to the defendant.” As discussed further

 herein, this language cannot be found in McHone, N.C.G.S. § 15A-1420, or the official

 commentary to that section.

¶ 78 The trial court here set forth detailed findings that Claims I, II, IV, V, VI, X,

 XI, and XII in defendant’s motions for appropriate relief were without merit, and

 therefore, defendant was not entitled to an evidentiary hearing. In doing so, the trial

 court performed the gatekeeping function contemplated by the plain language of

 N.C.G.S. § 15A-1420(c) and discussed in McHone. The majority opinion, however,
 STATE V. ALLEN

 2021-NCSC-88

 Berger, J., dissenting

 strips trial court judges of this important gatekeeping function. As a result, trial

 courts will now be forced to spend precious time and resources conducting evidentiary

 hearings on meritless post-conviction motions.

¶ 79 In addition, the majority breathes life into defendant’s newly asserted claim

 that he was impermissibly shackled during his trial which occurred nearly eighteen

 years ago. The trial court correctly found that defendant’s newly imagined claim was

 procedurally barred. The majority, however, grants defendant an evidentiary

 hearing even though there is no evidence that defendant was shackled during his

 trial, defendant never objected to being shackled at trial, and defendant failed to

 argue that he was impermissibly shackled in his original appeal.

¶ 80 Furthermore, the majority brings a new form of prejudice into North Carolina’s

 jurisprudence on ineffective assistance of counsel claims: cumulative prejudice.

 Never has a cumulative prejudice standard been enunciated by this Court in this

 context, even though we frequently have addressed Strickland and ineffective

 assistance of council claims. At least here, however, the majority acknowledges that

 their “decision to recognize cumulative prejudice claims is based upon our own

 interpretation of Strickland and IAC doctrine[.]”

¶ 81 Because the majority misreads our precedent, misinterprets a straightforward

 statute, effectively rewrites post-conviction procedure by eliminating no-merit

 determinations by our trial courts, establishes a new standard by which any question
 STATE V. ALLEN

 2021-NCSC-88

 Berger, J., dissenting

 of fact raised in a motion for appropriate relief would require a full evidentiary

 hearing, and introduces cumulative prejudice into our ineffective assistance of

 counsel jurisprudence, I respectfully dissent.

 I. N.C.G.S. § 15A-1420 and McHone

¶ 82 Criminal defendants are not entitled to an evidentiary hearing on every claim

 set forth in a motion for appropriate relief. See N.C.G.S. § 15A-1420(c) (2019).

¶ 83 The majority misreads the unique procedural scenario in McHone to support

 its position that any factual dispute entitles a defendant to an evidentiary hearing.

 This Court in McHone did not grant the defendant an evidentiary hearing as the

 majority imagines. McHone, 348 N.C. at 259, 499 S.E.2d at 764. In McHone, the

 defendant made an oral supplemental motion for appropriate relief related to an

 order entered in a prior hearing on a motion for appropriate relief. Id. at 258, 499

 S.E.2d at 763. The defendant contended that the State had engaged in ex parte

 contact with the trial court when it submitted a proposed order denying the prior

 motion for appropriate relief without forwarding a copy to defense counsel. Id. The

 defendant asserted that the ex parte communication violated his due process rights.

 Id. The State did not counter that allegation in the trial court. Id.

¶ 84 However, in response to the defendant’s petition for a writ of certiorari with

 this Court, the State submitted an affidavit with a certified mail return receipt

 showing that the proposed order had been forwarded to defense counsel, countering
 STATE V. ALLEN

 2021-NCSC-88

 Berger, J., dissenting

 the allegation raised by the defendant with conflicting evidence. Id. at 259, 499

 S.E.2d at 763–64.

¶ 85 Thus, in McHone, the defendant made a meritorious claim in the trial court

 that his due process rights had been violated. The trial court, without the benefit of

 the affidavit provided to this Court concerning service of the proposed order, only had

 before it the defendant’s allegations concerning the purported ex parte

 communication. There was, therefore, a factual question, i.e., whether there was an

 ex parte communication concerning the order that could only be resolved at that time

 through hearing evidence from the State and the defendant. If the trial court had

 been presented with the affidavit from the State concerning service, the factual

 question could have been resolved without an evidentiary hearing.

¶ 86 This Court acknowledged that the trial court was not obligated to conduct an

 evidentiary hearing and remanded the case to the trial court, not for an evidentiary

 hearing but for the entry of findings of fact. Id. at 259, 499 S.E.2d at 764. The

 affidavit provided by the State in its response to the defendant’s petition would allow

 the factual question to be resolved without an evidentiary hearing. The majority

 simply misapprehends what took place in McHone. This Court remanded the case to

 the trial court, not for an evidentiary hearing, but for entry of findings of fact. See id.

 (“This Court is not the appropriate forum for resolving issues of fact, even though the

 State’s affidavit was filed here. We therefore reverse the order of the trial court and
 STATE V. ALLEN

 2021-NCSC-88

 Berger, J., dissenting

 remand this case to that court in order that it may make findings of fact, inter alia, as

 to whether defendant or defendant’s counsel was served with a copy of the original

 proposed order.” (emphasis added)).

¶ 87 Further evidence that McHone does not support the majority’s claim is found

 in the plain language of N.C.G.S. § 15A-1420(c), which establishes the framework by

 which trial courts determine whether an evidentiary hearing is appropriate. That

 section states:

 (1) Any party is entitled to a hearing on questions of law or
 fact arising from the motion and any supporting or
 opposing information presented unless the court
 determines that the motion is without merit. The court must
 determine, on the basis of these materials and the
 requirements of this subsection, whether an evidentiary
 hearing is required to resolve questions of fact. Upon the
 motion of either party, the judge may direct the attorneys
 for the parties to appear before him for a conference on any
 prehearing matter in the case.

 (2) An evidentiary hearing is not required when the motion
 is made in the trial court pursuant to G.S. 15A-1414, but
 the court may hold an evidentiary hearing if it is
 appropriate to resolve questions of fact.

 (3) The court must determine the motion without an
 evidentiary hearing when the motion and supporting and
 opposing information present only questions of law. The
 defendant has no right to be present at such a hearing
 where only questions of law are to be argued.

 (4) If the court cannot rule upon the motion without the
 hearing of evidence, it must conduct a hearing for the
 taking of evidence, and must make findings of fact. The
 defendant has a right to be present at the evidentiary
 STATE V. ALLEN

 2021-NCSC-88

 Berger, J., dissenting

 hearing and to be represented by counsel. A waiver of the
 right to be present must be in writing.

 (5) If an evidentiary hearing is held, the moving party has
 the burden of proving by a preponderance of the evidence
 every fact essential to support the motion.

 (6) A defendant who seeks relief by motion for appropriate
 relief must show the existence of the asserted ground for
 relief. Relief must be denied unless prejudice appears, in
 accordance with G.S. 15A-1443.

 (7) The court must rule upon the motion and enter its order
 accordingly. When the motion is based upon an asserted
 violation of the rights of the defendant under the
 Constitution or laws or treaties of the United States, the
 court must make and enter conclusions of law and a
 statement of the reasons for its determination to the extent
 required, when taken with other records and transcripts in
 the case, to indicate whether the defendant has had a full
 and fair hearing on the merits of the grounds so asserted.

 N.C.G.S. § 15A-1420(c) (emphasis added).

¶ 88 The official commentary to this section further clarifies that

 [i]t should be noted that the subsections provide for two
 types of hearings. One is the hearing based upon affidavits,
 transcripts, or the like, plus matters within the judge’s
 knowledge, to comply with the parties’ entitlement to a
 hearing on questions of law and fact. The other is an
 evidentiary hearing. G.S. 15A-1420(c)(3) provides that if
 the only question is a question of law then the matter is to
 be disposed of without an evidentiary hearing. On the
 other hand, subdivision (4) makes it clear that if it is
 necessary to take evidence the court must hold an
 evidentiary hearing at which the defendant has the right
 to be present and to be represented by counsel, and the
 judge must make findings of fact. . . .
 STATE V. ALLEN

 2021-NCSC-88

 Berger, J., dissenting

 Pursuant to subsections (c)(5) and (6) the moving
 party has the burden of proof, by a preponderance of
 evidence, with regard to facts essential to support the
 motion. The defendant must show the existence of the
 ground and substantial prejudice must appear. The
 definition of prejudice is cross-referenced to G.S. 15A-1443,
 in the Appeal Article, where the State rule on prejudice and
 the federal constitutional error rule are set out.

 N.C.G.S. § 15A-1420, Official Commentary (2019).

¶ 89 “It is well-established that the ‘ordinary rules of grammar apply when

 ascertaining the meaning of a statute, and the meaning must be construed according

 to the context and approved usage of the language.’ ” State v. Fuller, 376 N.C. 862,

 867, 855 S.E.2d 260, 265 (2021) (cleaned up) (quoting Dunn v. Pac. Emps. Ins. Co.,

 332 N.C. 129, 134, 418 S.E.2d 645, 648 (1992)). Based on the plain language of

 N.C.G.S. § 15A-1420(c), trial court judges serve as gatekeepers for meritorious

 motions for appropriate relief. Subsection 15A-1420(c)(1) clearly states that a

 defendant is only entitled to a hearing on a motion for appropriate relief if the trial

 court determines there is merit to the motion. See N.C.G.S. § 15A-1420(c)(1) (“The

 court must determine, on the basis of these materials and the requirements of this

 subsection, whether an evidentiary hearing is required to resolve questions of fact.”)

 However, a determination of merit alone does not guarantee an evidentiary hearing.

¶ 90 As stated in the official commentary, there are two types of hearings: one in

 which the trial court makes factual or legal determinations based upon the contents

 of the motion and supporting evidence; and the other, a full evidentiary hearing. The
 STATE V. ALLEN

 2021-NCSC-88

 Berger, J., dissenting

 statute does not demand an evidentiary hearing merely because factual questions are

 presented in a defendant’s motion. Rather, after the trial court has determined that

 the motion is meritorious, the statute and the official commentary contemplate that

 an evidentiary hearing is to be conducted only when the trial court determines such

 a hearing is necessary. See N.C.G.S. § 15A-1420(c); N.C.G.S. § 15A-1420, Official

 Commentary. Thus, an evidentiary hearing is only required when a party’s motion

 (1) has merit, and (2) the trial court determines that it cannot resolve the factual

 questions based on the materials provided by the moving party.

¶ 91 Contrary to the majority’s holding, the trial court here was not “obligated to

 conduct an evidentiary hearing[.]” The majority misreads the statute, skipping the

 merits determination and eliminating the ability for a trial court to resolve factual

 issues based upon the materials submitted without an evidentiary hearing. Instead,

 the majority merges the two inquiries required by the statute into one determination,

 holding that the statute requires an evidentiary hearing must be conducted “to

 resolve disputed issues of fact” regardless of merit.

¶ 92 Moreover, the phrase “disputed issues of fact” does not appear in N.C.G.S. §

 15A-1420(c) or the official commentary because the statute and official commentary

 clearly set forth that merit determinations and hearings may be conducted by the

 trial court to resolve factual issues short of an evidentiary hearing. See N.C.G.S. §

 15A-1420(c)(1) (“The court must determine, on the basis of these materials and the
 STATE V. ALLEN

 2021-NCSC-88

 Berger, J., dissenting

 requirements of this subsection, whether an evidentiary hearing is required to resolve

 questions of fact.” (emphasis added)).

¶ 93 Thus, a proper and complete reading of McHone clearly sets forth, consistent

 with the plain language of N.C.G.S. § 15A-1420(c), that a defendant’s motion for

 appropriate relief may be dismissed without an evidentiary hearing on questions of

 law or fact if the trial court determines that the defendant is entitled to no relief, i.e.,

 that the motion has no merit. The majority’s misinterpretation of the statute and

 gross misreading of McHone impermissibly amends N.C.G.S. § 15A-1420(c) and alters

 the plain language of an otherwise straightforward statute.

 II. Standard of Review

¶ 94 The majority’s misreading of McHone and N.C.G.S. § 15A-1420(c) also results

 in its application of an incorrect standard of review. By erroneously stating that the

 summary dismissal of a MAR is reviewed de novo, the majority ignores our precedent

 and eliminates all deference owed to the trial court.

¶ 95 The trial court’s “findings of fact are binding on this Court if they are supported

 by competent evidence and may not be disturbed absent an abuse of discretion. The

 lower court’s conclusions of law are reviewed de novo.” State v. Lane, 370 N.C. 508,

 517, 809 S.E.2d 568, 574 (2018) (cleaned up) (quoting State v. Gardner, 227 N.C. App.

 364, 365–66, 742 S.E.2d 352, 354 (2013)) (adopting the “analogous standard of review

 for a denial of a motion for appropriate relief” as the standard of review for denial of
 STATE V. ALLEN

 2021-NCSC-88

 Berger, J., dissenting

 a motion for postconviction DNA testing “because the trial court sits as finder of fact

 in both circumstances.”). Moreover, this Court must refrain from reweighing the

 evidence and should defer to the trial court’s findings of fact which are “binding upon

 the [defendant] if they [a]re supported by the evidence,” even if the evidence is

 conflicting. State v. Stevens, 305 N.C. 712, 719–20, 291 S.E.2d 585, 591 (1982)

 (citations omitted). Critically, where “findings are supported by the evidence in the

 record . . . it is not the duty of this Court to reweigh the evidence presented to the

 trial court.” State v. Johnson, 371 N.C. 870, 881, 821 S.E.2d 822, 831 (2018).

¶ 96 However, the trial court’s determination of merit under N.C.G.S. § 15A-1420(c)

 is reviewed de novo. See Lane, 370 N.C. at 517, 809 S.E.2d at 574.

¶ 97 The majority needlessly muddies the water by conflating our review of the trial

 court’s factfinding with our review of the trial court’s legal conclusion that a MAR is

 without merit. In doing so, the majority eliminates the great deference that must be

 afforded to the trial court’s factual determinations. See State v. Cummings, 361 N.C.

 438, 447, 648 S.E.2d 788, 794 (2007) (“A trial court abuses its discretion if its

 determination is manifestly unsupported by reason and is so arbitrary that it could

 not have been the result of a reasoned decision. In our review, we consider not

 whether we might disagree with the trial court, but whether the trial court’s actions

 are fairly supported by the record.” (cleaned up) (quoting White v. White, 312 N.C.

 770, 777, 324 S.E.2d 829, 833 (1985) and Wainwright v. Witt, 469 U.S. 412, 434
 STATE V. ALLEN

 2021-NCSC-88

 Berger, J., dissenting

 (1985))); State v. Larrimore, 340 N.C. 119, 134, 456 S.E.2d 789, 796 (1995)

 (“According, as we must, great deference to the findings of the trial court, we cannot

 find error in its findings of facts . . . .” (citations omitted)).

¶ 98 Here, the majority’s broad application of de novo review ignores the nuance of

 our precedent and results in wholesale reweighing of the evidence. The majority

 further exacerbates this error by also holding that this evidence must be reweighed

 “in the light most favorable to the defendant[.]” This holding, as with the majority’s

 application of de novo review, is without support in either our General Statutes or

 our caselaw.

¶ 99 Nowhere in N.C.G.S. § 15A-1420(c) is it stated that the evidence is to be viewed

 in the light most favorable to the defendant.1 In fact, N.C.G.S. § 15A-1420(c)(6)

 states, “[a] defendant who seeks relief by motion for appropriate relief must show the

 existence of the asserted ground for relief.” N.C.G.S. § 15A-1420(c)(6) (emphasis

 added). The official commentary further clarifies that

 [p]ursuant to subsections (c)(5) and (6) the moving party
 has the burden of proof, by a preponderance of evidence,
 with regard to facts essential to support the motion. The
 defendant must show the existence of the ground and
 prejudice must appear.

 1 Interestingly, the majority creates a standard far lower than summary judgment in

 civil procedure, even though here a jury has already determined defendant’s guilt beyond a
 reasonable doubt. The invented “in the light most favorable to the defendant” standard for
 disputed factual issues is astoundingly low. This standard is on par with notice pleading in
 civil procedure. It will be the rare attorney who fails to meet this standard for his client.
 STATE V. ALLEN

 2021-NCSC-88

 Berger, J., dissenting

 N.C.G.S. § 15A-1420, Official Commentary.

¶ 100 The majority contends that McHone, 348 N.C. at 258, 499 S.E.2d at 763,

 supports its “light most favorable to the defendant” language. The entire text of page

 258 is set forth as follows:

 [T]he trial court may determine that the motion “is without
 merit” within the meaning of subsection (c)(1) and deny it
 without any hearing on questions of law or fact.
 Defendant’s contention that he was entitled to a hearing
 and entitled to present evidence simply because his motion
 for appropriate relief was based in part upon asserted
 denials of his rights under the Constitution of the United
 States is without merit.

 However, defendant also contends in the present
 case that he was entitled to an evidentiary hearing before
 the trial court ruled on his motion for appropriate relief as
 supplemented because some of his asserted grounds for
 relief required the trial court to resolve questions of fact.
 We find this contention to have merit. N.C.G.S. § 15A-
 1420(c)(1) mandates that “[t]he court must determine . . .
 whether an evidentiary hearing is required to resolve
 questions of fact.” If the trial court “cannot rule upon the
 motion without the hearing of evidence, it must conduct a
 hearing for the taking of evidence, and must make findings
 of fact.” N.C.G.S. § 15A-1420(c)(4). Under subsection (c)(4),
 read in pari materia with subsections (c)(1), (c)(2), and
 (c)(3), an evidentiary hearing is required unless the motion
 presents assertions of fact which will entitle the defendant
 to no relief even if resolved in his favor, or the motion
 presents only questions of law, or the motion is made
 pursuant to N.C.G.S. § 15A-1414 within ten days after
 entry of judgment.

 At the 9 December 1996 hearing, defendant
 contended for the first time that in August 1996, the State
 had sent to the trial court a proposed order denying
 STATE V. ALLEN

 2021-NCSC-88

 Berger, J., dissenting

 defendant’s original motion for appropriate relief without
 providing defendant with a copy. This matter was not
 raised or referred to in defendant’s original or
 supplemental motion for appropriate relief. During the 9
 December 1996 hearing, the State acknowledged that it did
 send a proposed order to the trial court and that the trial
 court signed the State’s proposed order dismissing
 defendant’s original motion for appropriate relief.
 Defendant contended at the 9 December hearing that since
 neither he nor his counsel were served with a copy of the
 proposed order, the State had engaged in an improper ex
 parte communication with the trial court in violation of his
 rights to due process under the state and federal
 constitutions. Thus, during the 9 December 1996 hearing,
 defendant orally moved for the first time to have the
 August 1996 order denying his original motion for
 appropriate relief vacated because of the ex parte contact.
 The trial court summarily denied that motion and entered
 its 9 December 1996 order denying defendant’s motion for
 appropriate relief as supplemented.

 McHone, 348 N.C. at 257–58, 499 S.E.2d at 763 (second and third alterations in

 original) (citation omitted) (quoting N.C.G.S. § 15A-1420(c)(1) (1997)). As one can

 plainly see, there is no language or inference which could be drawn from this passage

 in McHone that supports the majority’s assertion that we view the evidence in the

 light most favorable to the defendant when reviewing a summary denial of a MAR.

¶ 101 Additionally, the approach implemented by the majority deviates from other

 areas of our caselaw which mandate that when a party makes a motion, we view the

 evidence in the light most favorable to the nonmoving party. See State v. McNeil, 359

 N.C. 800, 804, 617 S.E.2d 271, 274 (2005) (stating that when a defendant makes a

 motion to dismiss, “ ‘[t]he reviewing court considers all evidence in the light most
 STATE V. ALLEN

 2021-NCSC-88

 Berger, J., dissenting

 favorable to the State, and the State receives the benefit of every reasonable inference

 supported by that evidence.’ ” (quoting State v. Garcia, 358 N.C. 382, 412–13, 597

 S.E.2d 724, 746 (2004))); Dalton v. Camp, 353 N.C. 647, 651, 548 S.E.2d 704, 707

 (2001) (“When considering a motion for summary judgment, the trial judge must view

 the presented evidence in a light most favorable to the nonmoving party.” (citation

 omitted)); State v. James, 321 N.C. 676, 686, 365 S.E.2d 579, 586 (1988) (“In ruling

 upon a motion to dismiss, the trial court must consider the evidence in the light most

 favorable to the State, allowing every reasonable inference to be drawn therefrom.”

 (citation omitted)).

¶ 102 The majority’s improper application of de novo review eliminates the great

 deference that should be afforded to the trial court’s factual determinations, and the

 majority’s improper reweighing of the evidence nullifies the trial court’s merit

 determination under N.C.G.S. § 15A-1420(c). Further, when combined with the

 majority’s assertion that we must view the evidence in the light most favorable to the

 defendant, the majority runs afoul of the plain reading of N.C.G.S. § 15A-1420(c) by

 eliminating any burden for the defendant other than providing notice to the State.

 III. Ineffective Assistance of Counsel

¶ 103 Defendant filed an MAR and SMAR asserting ineffective assistance of counsel

 (IAC), among other claims. The trial court found no merit pursuant to N.C.G.S. §

 15A-1420 and denied defendant’s claims of IAC without an evidentiary hearing.
 STATE V. ALLEN

 2021-NCSC-88

 Berger, J., dissenting

 Defendant contends, and the majority agrees, that he was entitled to an evidentiary

 hearing on his IAC claims.

¶ 104 A defendant’s claim for IAC must satisfy the two prongs of Strickland v.

 Washington, 466 U.S. 668 (1984). First, the defendant must show that counsel’s

 performance was deficient. Id. at 687. “Deficient performance may be established by

 showing that counsel’s representation fell below an objective standard of

 reasonableness.” State v. Allen, 360 N.C. 297, 316, 626 S.E.2d 271, 286 (cleaned up)

 (quoting Wiggins v. Smith, 539 U.S. 510, 521 (2003)), cert. denied, 549 U.S. 867

 (2006). Second, the defendant must show that counsel’s deficient performance was

 prejudicial to his defense. Strickland, 466 U.S. at 692. “Generally, to establish

 prejudice, a defendant must show that there is a reasonable probability that, but for

 counsel’s unprofessional errors, the result of the proceeding would have been

 different. A reasonable probability is a probability sufficient to undermine confidence

 in the outcome.” Allen, 360 N.C. at 316, 626 S.E.2d at 286 (cleaned up) (quoting

 Wiggins, 539 U.S. at 534). When assessing reasonableness, a reviewing court

 considers “whether counsel’s assistance was reasonable considering all the

 circumstances.” Strickland, 466 U.S. at 688.

¶ 105 Describing the hurdle that defendants must overcome to prevail on an IAC

 claim, this Court has stated that trial “[c]ounsel is given wide latitude in matters of

 strategy, and the burden to show that counsel’s performance fell short of the required
 STATE V. ALLEN

 2021-NCSC-88

 Berger, J., dissenting

 standard is a heavy one for defendant to bear.” State v. McNeill, 371 N.C. 198, 218–

 19, 813 S.E.2d 797, 812 (2018) (alteration in original) (quoting State v. Fletcher, 354

 N.C. 455, 482, 555 S.E.2d 534, 551 (2001)). Decisions concerning trial strategy “are

 not generally second-guessed by this Court.” State v. Prevatte, 356 N.C. 178, 236, 570

 S.E.2d 440, 472 (2002), cert. denied, 538 U.S. 986 (2003) (citation omitted).

¶ 106 Reading the majority opinion, defendant’s brief, and listening to defendant’s

 oral argument, one could easily conclude that defendant’s two attorneys were grossly

 incompetent and ill-equipped to handle a murder trial. In reality, the two attorneys

 who represented defendant at trial, Carl Atkinson and Pierre Oldham, had

 represented at least twenty-five capital-eligible defendants prior to their

 representation of defendant. Neither attorney had ever been disciplined by the State

 Bar or found to have provided IAC.

¶ 107 Atkinson testified at the evidentiary hearing related to the sentencing phase

 that he frequently consulted with the Center for Death Penalty Litigation about

 defendant’s case.2 Atkinson stated that his purpose in “dealing with the Center for

 Death Penalty Litigation was to get any help [he] could in addressing [defendant’s]

 case.” Atkinson discussed potential experts with the capital defender, and Atkinson

 testified that “every time I needed a recommendation of that nature I went to the

 2 The Center for Death Penalty Litigation represents defendant, and they argue that

 the attorneys who sought their advice were ineffective at trial.
 STATE V. ALLEN

 2021-NCSC-88

 Berger, J., dissenting

 Center for Death Penalty Litigation.” According to Atkinson, the Center for Death

 Penalty Litigation “basically believed that [defendant was] likely to be convicted” and

 that the attorneys should focus on mitigation at sentencing.

¶ 108 Atkinson also attended the “Capital College.” According to Atkinson, this was

 a group of experts from the Center for Death Penalty Litigation and the Academy of

 Trial Lawyers who met with attorneys handling capital cases. During four days of

 meetings, attorneys would “present . . . discovery information, all [the] materials to

 them,” and the experts would “go through a process of developing [the] case.”

 Atkinson presented defendant’s case to this group of experts.

¶ 109 In addition, defendant attached to his motion for appropriate relief an affidavit

 from Oldham. Oldham’s affidavit stated, in relevant part, the following:

 3. After being assigned to the case, [co-counsel] and I
 pursued discovery from the District Attorney and law
 enforcement agencies. I recall that from the very
 beginning, we believed that the chief prosecution witness,
 Vanessa Smith, who claimed to be an eyewitness to the
 murder, was not telling the truth in her various statements
 to law enforcement. I also recall that the State’s case was
 based almost entirely on her testimony.

 ....

 5. I do not recall [co-counsel] and me making any strategic
 decisions concerning the evidence discussed in Claim II of
 the MAR and SMAR. For example, I do not recall an
 individual named Troy Spencer contacting either [co-
 counsel] or me prior to trial. If I had known, however, that
 he claimed that Vanessa Smith had confessed to planning
 the murder of Christopher Gailey, and that she had shot
 STATE V. ALLEN

 2021-NCSC-88

 Berger, J., dissenting

 and killed him, I would have contacted him, conducted a
 thorough investigation of his statements, and considered
 calling him in the guilt phase of the trial.

 6. Although I recall our private investigator looking for Mr.
 Allen’s long-time friend, Christina Fowler, I do not recall
 that he ever found her, or that he learned from her that
 Scott Allen spent most of the night of the murder at her
 house. Had [co-counsel] and I known that, we would have
 conducted additional investigation of the alibi evidence and
 considered calling her as a defense witness in the guilt
 phase of the trial. I do not recall making any strategic
 decision not to call Ms. Fowler as a witness in either phase
 of the trial.

 7. Similarly, I do not recall [co-counsel] and me making any
 strategic decisions to limit the cross-examination of the
 State’s witnesses, including Vanessa Smith. . . . We did not
 have an expert crime scene analyst to assist our
 understanding of the crime scene, or to help us use that
 information to impeach Ms. Smith’s story of the crime. . . .

 8. I have no recollection of a strategic decision not to call a
 mental health expert to testify during either phase of the
 trial. . . .

 9. I also have no recollection of making a strategic decision
 to limit our investigation of possible other suspects in the
 case. I do not recall the evidence of other suspects set forth
 in Mr. Allen’s Claim XI, and do not recall anything about
 other individuals with a motive to harm Gailey, or their
 whereabouts on the night of the murder.

 (Emphases added.)

¶ 110 The majority finds that Oldham’s affidavit, littered with statements that he

 does not remember what took place, serves as “direct evidence” that “directly

 undercuts” the MAR court’s finding that counsel made a strategic decision. However,
 STATE V. ALLEN

 2021-NCSC-88

 Berger, J., dissenting

 Oldham’s affidavit fails to shed any light on defendant’s claim of ineffective assistance

 of counsel. The majority nevertheless uses this as the starting point for a chain of

 assumptions and speculation that it claims provides the factual predicate to an

 evidentiary hearing. This is in the face of the sworn testimony at trial and defense

 counsels’ reasonable and clearly stated trial strategy of casting doubt on Vanessa

 Smith’s credibility.

¶ 111 Defendant here had the benefit of two experienced attorneys at trial who made

 the reasonable decision to focus on the credibility of one of the State’s witnesses. The

 attorneys sought advice on strategy and the use of expert witnesses from the Center

 for Death Penalty Litigation and experts in the field of capital litigation. These

 experts were confident that defendant would be convicted of capital murder and that

 defense counsels’ best strategy to avoid a death sentence for defendant related to

 mitigation evidence during the sentencing phase.

¶ 112 Now, nearly eighteen years after his conviction, the Center for Death Penalty

 Litigation claims the attorneys they coached were ineffective because they did not

 consult a crime scene expert. However, as the trial court found:

 51. Defendant also contends that trial counsel was
 ineffective for failing to call an expert crime scene analyst
 to testify regarding alleged discrepancies between Smith’s
 testimony and the physical evidence found at the location
 of Gailey’s murder. (SMAR pp. 12–15) In support of this
 contention, Defendant presents the affidavit and report of
 Gregg O. McCrary (“McCrary”), a post-conviction crime
 scene analyst . . . . However, McCrary’s report is based
 STATE V. ALLEN

 2021-NCSC-88

 Berger, J., dissenting

upon the assumption that “[t]he only link between Scott
Allen and the murder of Christopher Gailey are the
allegations made by Ms. Smith.” (SMAR Ex. B of Ex. 41 p.
12) This assumption is faulty as belied by the record.

52. Several other witnesses corroborated Defendant’s
involvement in the murder. Absent from McCrary’s
analysis and report are the trial testimony of Harold
Blackwelder (“Blackwelder”), Jeffrey Page (“Page”), and
Coy Honeycutt (“Honeycutt”). (See SMAR Ex. 41) At
Defendant’s trial, Blackwelder testified that Defendant
and Smith arrived at a cookout . . . on 10 July 1999. (T pp.
1748–49) As soon as Defendant and Smith arrived,
Blackwelder went outside and saw a white pickup truck
matching the description of Gailey’s truck provided by
Johnson earlier in the trial. (See T p. 1749–50; T pp. 1464–
65) . . . .

53. . . . Defendant told Page that after Defendant shot the
fellow, he “heard the boy groaning, and he also stated that
he would throw a rock and when that rock would hit the
ground the fellow thought that it was him and the fellow
had a gun undoubtedly and went to shooting.” (T p. 1781).
. . . Also, Defendant told Page “that the reason he shot that
boy [was] because he thought that boy was going to rat him
off because he was an escapee from Troy prison.” (T p. 1785)
....

54. . . . [A]ny alleged deficiency of trial counsel and
prejudice resulting therefrom regarding counsel’s failure to
call a crime scene analyst must be viewed in light of
Defendant’s subsequent statements and actions that link
him to Gailey’s murder.

....

56. Here, the record supports the conclusion that trial
counsels’ apparent decision to focus on the doubt created
by Smith’s gaps in memory, addiction and use of controlled
substances on the date of Gailey’s death, and failure to
 STATE V. ALLEN

 2021-NCSC-88

 Berger, J., dissenting

 maintain a cohesive timeline, rather than attempting to
 prove Defendant’s innocence through the use of a crime
 scene analyst was a sound tactical decision. In light of the
 inculpatory statements Defendant made to Page . . . trial
 counsels’ failure to call an expert crime scene analyst to
 testify was not an objectively unreasonable decision.
 Additionally, Defendant has failed to show that he suffered
 any prejudice from trial counsels’ failure to call a crime
 scene analyst because Defendant’s statements to Page,
 possession of Gailey’s truck so soon after Gailey’s demise,
 and willingness to sell the truck for a price far below the
 fair market value all tended to demonstrate evidence of
 Defendant’s guilt. Therefore, Defendant has failed to show
 that trial counsel deficiently represented Defendant by
 committing an objectively unreasonable error or that trial
 counsels’ representation so prejudiced the defense as to
 deprive Defendant of a fair trial whose result was reliable.

¶ 113 These findings of fact were supported by the evidence presented at trial. The

 majority gives greater weight to the contrary conclusion in the McCrary Report than

 it does to the sworn testimony provided at trial. In fact, at trial, Blackwelder testified

 that defendant arrived at a cookout with a white pickup truck matching the

 description of Gailey’s truck. Defendant told Page that he shot someone in the

 Uwharrie National Forest and “heard the boy groaning, and he also stated that he

 would throw a rock and when that rock would hit the ground the fellow thought that

 it was him and the fellow had a gun undoubtedly and went to shooting.” Defendant

 also told Page that “the reason he shot that boy [was] because he thought that boy

 was going to rat him off because he was an escapee from Troy prison.” Page testified

 that defendant offered to sell him the truck, matching the description of Gailey’s, at
 STATE V. ALLEN

 2021-NCSC-88

 Berger, J., dissenting

 significantly less than fair market value.

¶ 114 Based upon this evidence presented at trial, we cannot say that the trial court

 erred in finding that “trial counsels’ failure to call a crime scene analyst” was not an

 objectively unreasonable decision. See Harrington v. Richter, 562 U.S. 86, 106–07

 (2011) (finding that counsel’s decisions to forgo the use of experts can be reasonable

 because counsel was “entitled to formulate a strategy that was reasonable at the time

 and to balance limited resources in accord with effective trial tactics and strategies.”).

 Accordingly, the trial court did not abuse its discretion by resolving the factual issues

 based upon the evidence presented by defendant and did not err in determining that

 defendant’s IAC claim was without merit.

¶ 115 It should be noted that the majority states that they considered all of

 defendant’s guilt-innocence claims in their entirety. In reality, the majority only

 considered the above crime-scene-investigation claim. Rather than addressing

 defendant’s other four claims (Claims III, VI, X, and XI) to determine whether an

 evidentiary hearing is required, the majority simply states that “[h]aving already

 determined that the MAR court erred in summarily denying one of [defendant’s] IAC

 claims, we need not address his other claims here[.]” Nowhere in N.C.G.S. § 15A-

 1420 or our caselaw is it stated that if an evidentiary hearing should have been held

 on one claim, it must be held on all other claims. It is curious that the majority holds

 that summary dismissal of defendant’s claims was error, yet summarily grants an
 STATE V. ALLEN

 2021-NCSC-88

 Berger, J., dissenting

 evidentiary hearing for defendant’s claims without analysis and in the face of binding

 findings of fact by the trial court.

 IV. Shackling Claim

¶ 116 In Claim XII of his SMAR, defendant alleged that he was impermissibly

 shackled in the presence of the jury without justification in violation of his statutory

 and constitutional rights. In support of his claim, defendant produced information

 from two jurors and from one alternate juror.

¶ 117 The State argued, and the MAR court agreed, that defendant’s claim was

 procedurally barred under N.C.G.S. § 15A-1419(a)(3) because he was in an adequate

 position to raise the issue on direct appeal but failed to do so. In the alternative, the

 MAR court concluded that even if defendant’s shackling claim was not procedurally

 barred, it was meritless.

¶ 118 Under both the North Carolina Constitution and the United States

 Constitution, a defendant may not be visibly shackled in the courtroom in the

 presence of the jury unless there is a special need for restraints specific to the

 defendant. See State v. Tolley, 290 N.C. 349, 367, 226 S.E.2d 353, 367 (1976); see also

 Deck v. Missouri, 544 U.S. 622, 626 (2005) (“The law has long forbidden routine use

 of visible shackles during the guilt phase; it permits a State to shackle a criminal

 defendant only in the presence of a special need.”). Consistent with this

 constitutional rule, N.C.G.S § 15A-1031 permits a trial court judge to order a
 STATE V. ALLEN

 2021-NCSC-88

 Berger, J., dissenting

 defendant restrained in court only when doing so is “reasonably necessary to

 maintain order, prevent the defendant’s escape, or provide for the safety of persons[,]”

 and only then after the judge “[e]nter[s] in the record out of the presence of the jury

 and in the presence of the person to be restrained and his counsel, if any, the reasons

 for” imposing the restraints and after giving the defendant an opportunity to be heard

 on the matter. N.C.G.S. § 15A-1031 (2019). Typically, adherence to this mandatory

 statutory procedure ensures that evidence of a defendant’s shackling appears in the

 record and transcript of trial, enabling the defendant to challenge the judge’s decision

 to impose restraints on direct appeal.

¶ 119 In this case, there is no evidence in the record or transcript suggesting that

 defendant was restrained during trial. The trial court did not enter factual findings

 as would have been required prior to ordering defendant shackled under N.C.G.S §

 15A-1031. Defendant did not object or otherwise note that he was restrained in a

 manner visible to the jury.

¶ 120 Relying principally on our decision in State v. Hyman, 371 N.C. 363, 817 S.E.2d

 157 (2018), defendant contends that his failure to raise any objection to the purported

 shackling at trial does not preclude post-conviction review. He argues that the

 procedural bar does not apply when the record is completely silent as to whether the

 alleged shackling did or did not occur, because when the record is silent, the

 defendant is not “in a position to adequately raise the ground or issue underlying the
 STATE V. ALLEN

 2021-NCSC-88

 Berger, J., dissenting

 [MAR claim]” within the meaning of N.C.G.S. § 15A-1419(a)(3).

¶ 121 This case is distinguishable from Hyman. In Hyman, we held that a defendant

 was not procedurally barred from raising an IAC claim on post-conviction review,

 even though he had not raised the claim on direct appeal. Hyman, 371 N.C. at 385,

 817 S.E.2d at 171. The defendant’s IAC claim challenged his attorney’s failure to

 withdraw from representing him during trial. Id. at 367–68, 817 S.E.2d at 161. The

 attorney worked at a law firm that had previously represented a witness at the

 defendant’s trial whose testimony inculpated the defendant. Id. During cross-

 examination, an exchange between counsel and the inculpating witness suggested

 the witness had previously conveyed a different account of the events in question than

 the one the witness was offering at trial. Id. at 365–66, 817 S.E.2d at 160. The

 defendant argued that his attorney should have withdrawn from the representation

 and testified regarding the contents of this alleged conversation. Id. at 367–68, 817

 S.E.2d at 161.

¶ 122 We explained that in order to prove his attorney rendered IAC, the defendant

 was required to prove numerous facts, including (1) that the alleged pretrial

 conversation between the witness and the defendant’s attorney had in fact occurred,

 (2) that during the conversation the witness made statements inconsistent with his

 trial testimony, (3) that the attorney did not have a strategic reason for failing to

 withdraw from representing the defendant, and (4) that the testimony the attorney
 STATE V. ALLEN

 2021-NCSC-88

 Berger, J., dissenting

 would have been able to deliver would have benefitted the defendant. Id. at 384–85,

 817 S.E.2d at 170–71. Because “[t]he record developed at trial did not contain any

 information affirmatively tending to show” any of those facts, we concluded that the

 record did not “contain[ ] sufficient information to permit the reviewing court to make

 all the factual and legal determinations necessary to allow a proper resolution of the

 claim in question.” Id. at 383–84, 817 S.E.2d at 170. We thus held that the

 procedural bar provided for in N.C.G.S. § 15A-1419(a)(3) did not apply. Id. at 385,

 817 S.E.2d at 171.

¶ 123 The distinction between this case and Hyman is rooted in a basic difference

 between an impermissible shackling claim and an IAC claim. To prevail on an

 impermissible shackling claim, a threshold fact must first be established: that the

 defendant was shackled at trial. Absent some indication in the record or transcript

 that the defendant was shackled, it is appropriate to presume that the defendant was

 not shackled. In the rare case where the defendant is shackled at trial but the

 shackling is not reflected in the record—because the trial court has failed to adhere

 to the constitutionally necessary procedural safeguards codified in N.C.G.S § 15A-

 1031—the defendant possesses all of the information necessary to cure that

 deficiency, as the defendant knows whether he or she has been subjected to restraints

 during trial.

¶ 124 By contrast, the same is not true when a defendant brings an IAC claim on
 STATE V. ALLEN

 2021-NCSC-88

 Berger, J., dissenting

 direct appeal. On direct appeal, even a fully developed record will generally fail to

 contain information without which the claim cannot be adjudicated. When that

 occurs, the defendant is typically not in a position to fill the necessary gaps in the

 record. Resolving an IAC claim frequently requires information that necessarily is

 not a part of the record at trial, namely whether trial counsel made a conscious choice

 to pursue a given strategy, why that strategy was chosen, and whether that choice

 was reasonable. Thus, “because of the nature of IAC claims, defendants likely will

 not be in a position to adequately develop many IAC claims on direct appeal.” State

 v. Fair, 354 N.C. 131, 167, 557 S.E.2d 500, 525 (2001).

¶ 125 When presented with a “prematurely asserted” IAC claim, the court “shall

 dismiss those claims without prejudice to the defendant’s right to reassert them

 during a subsequent MAR proceeding.” Id.; see also State v. Hyatt, 355 N.C. 642, 668,

 566 S.E.2d 61, 78 (2002) (dismissing without prejudice IAC claim that is “suggested

 by the record but [is] insufficiently developed for review”); State v. Watts, 357 N.C.

 366, 378, 584 S.E.2d 740, 749 (2003) (concluding that defendant did not waive IAC

 claim because “there are evidentiary issues which may need to be developed before

 defendant will be in a position to adequately raise his potential IAC claim”).

¶ 126 However, the nature of shackling claims renders them usually susceptible to

 direct review. Accordingly, Hyman is fully consistent with application of the

 procedural bar under the circumstances of this case. See N.C.G.S. § 15A-1415,
 STATE V. ALLEN

 2021-NCSC-88

 Berger, J., dissenting

 Official Commentary (2019) (“It should also be taken into account with the latter

 consideration that additional finality has been added in G.S. 15A-1419 by making it

 clear that there is but one chance to raise available matters after the case is over, and

 if there has been a previous assertion of the error, or opportunity to assert the error,

 by motion or appeal, a later motion may be denied on that basis.”); see also N.C.G.S.

 § 15A-1419, Official Commentary (2019) (“[O]nce a matter has been litigated or there

 has been opportunity to litigate a matter, there will not be a right to seek relief by

 additional motions at a later date. Thus, this section provides, in short, that if a

 matter has been determined on the merits upon an appeal, or upon a post-trial motion

 or proceeding, there is no right to litigate the matter again in an additional motion

 for appropriate relief. Similarly, if there has been an opportunity to have the matter

 considered on a previous motion for appropriate relief or appeal the court may deny

 the motion for appropriate relief.”).

 V. Cumulative Error

¶ 127 Next, defendant claims that his alleged IAC claims in his MAR and SMAR

 amount to cumulative error. The majority rejects our jurisprudence in this area, and

 the MAR court’s conclusion that cumulative error does not apply to IAC claims. While

 the trial court correctly recognized that such a claim has never been sanctioned by

 this Court, the majority now proclaims that the “decision to recognize cumulative

 prejudice claims is based upon our own interpretation of Strickland and IAC
 STATE V. ALLEN

 2021-NCSC-88

 Berger, J., dissenting

 doctrine.”

¶ 128 While the majority cites to State v. Thompson, 359 N.C. 77, 604 S.E.2d 850

 (2004); Williams v. Taylor, 529 U.S. 362 (2000); and State v. Lane, 271 N.C. App. 307,

 844 S.E.2d 32 (2020), those cases do not support the proposition that cumulative error

 applies to IAC claims.

¶ 129 Once again, the majority misreads our precedent. Thompson merely reiterated

 a single argument the defendant was attempting to make and did not recognize nor

 adopt the defendant’s position on cumulative prejudice for IAC claims. See

 Thompson, 359 N.C. at 121–22, 604 S.E.2d at 880. Furthermore, the majority

 incorrectly asserts that the Supreme Court of the United States recognized

 cumulative prejudice for IAC claims in Williams. In Williams, the Supreme Court

 referred to the cumulation of “the totality of the available mitigation evidence . . . in

 reweighing it against the evidence in aggravation” and not, as the majority

 mistakenly asserts, to cumulative error in IAC claims. Williams, 529 U.S. at 397–98.

¶ 130 Lastly, the majority employs a North Carolina Court of Appeals case, Lane, for

 the proposition that “courts can consider the cumulative effect of alleged errors by

 counsel.” Lane, 271 N.C. App. at 316, 844 S.E.2d at 40. However, Court of Appeals

 precedent is not binding upon this court. See State v. Steen, 376 N.C. 469, 497, 852

 S.E.2d 14, 33 (2020) (Earls, J., concurring in result in part and dissenting in part)

 (“The majority also cites a number of cases from the Court of Appeals; however,
 STATE V. ALLEN

 2021-NCSC-88

 Berger, J., dissenting

 ‘precedents set by the Court of Appeals are not binding on this Court.’ ” (quoting

 Mazza v. Med. Mut. Ins. Co., 311 N.C. 621, 631, 319 S.E.2d 217, 223 (1984))). At no

 point in our precedent has this Court applied cumulative error to IAC claims, and we

 should decline to do so now.

 VI. Conclusion

¶ 131 For the reasons stated herein, I respectfully dissent.3

 Chief Justice NEWBY and Justice BARRINGER join in this dissenting

 opinion.

 3 As to those instances where the majority upholds the trial court’s order, I concur in

 the result only.